**Patricia COSGROVE, Plaintiff–Appellant,**

v.

**SEARS, ROEBUCK & CO.,**
**Defendant–Appellee.**

**No. 260, Docket 92–7197.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 17, 1992.

Decided Nov. 19, 1993.

Patricia Cosgrove, plaintiff-appellant, pro se.

Dee Estelle Alpert, New York City, of counsel to plaintiff-appellant.

Noah A. Kinigstein, New York City, amicus curiae to plaintiff-appellant.

Paul Bogas, Washington, DC (Donald R. Livingston, Gen. Counsel, Gwendolyn Young Reams, Associate Gen. Counsel, Carolyn L. Wheeler, Asst. Gen. Counsel, E.E.O.C.) amicus curiae to plaintiff-appellant.

Pamela S. Horowitz, Advocates at Law Chartered, Washington, DC, for defendant-appellee.

Arthur J. Ginsburg, Frankfurt, Garbus, Klein & Selz, New York City, for defendant-appellee.

Before: CARDAMONE, PIERCE and ALTIMARI, Circuit Judges.

PIERCE, Circuit Judge.

Patricia Cosgrove, *pro se*, appeals from a judgment entered in the United States District Court for the Southern District of New York (Charles S. Haight, Jr., Judge). Following a bench trial, the district court dismissed Cosgrove's employment discrimination complaint filed against Sears, Roebuck & Co. ("Sears") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Cosgrove alleged in her complaint that: (1) Sears discriminated against her in both compensation and promotion based upon her gender, in violation of 42 U.S.C. § 2000e–2(a)(1); (2) Sears retaliated against her, and eventually fired her, following a sex discrimination complaint filed with the Equal Employment Opportunity Commission ("EEOC"), in violation of 42 U.S.C. § 2000e–3(a); (3) she had been the object of harassment in the workplace; and (4) following her

termination, Sears impeded her efforts to obtain new employment. On January 10, 1992, following a bench trial, the district court determined that: (1) Sears had demonstrated a legitimate reason for Cosgrove's discharge; (2) Cosgrove had failed to prove gender discrimination; (3) Cosgrove had failed to prove sexual harassment in the workplace; and (4) Cosgrove had failed to prove post-termination discrimination. *Cosgrove v. Sears Roebuck & Co.*, No. 81 Civ. 3482, 1992 WL 8718 (S.D.N.Y. January 10, 1992). For the reasons set forth below, we affirm in part and reverse in part, and remand the case to the district court for further proceedings.

## BACKGROUND

Patricia Cosgrove's bench trial began on September 11, 1991. The evidence adduced at trial revealed the following facts: On November 4, 1969, Cosgrove was hired by Sears as a women's sportswear buyer's assistant in Department 607 (women's sportswear). On June 16, 1974, she was temporarily assigned to Department 618 (women's intimate apparel) as a trainee for the position of assistant merchandise controller. Her immediate supervisor was Raleigh Hegwood, merchandise controller for Department 618, and the head of the department was Elmer Brumfield, the national merchandise manager for the product line. Cosgrove was promoted to the position of assistant controller in Department 618 on November 1, 1974. In Cosgrove's initial position as a buyer's assistant, she was classified as a "timecard" employee, and was compensated on an hourly basis. As an assistant merchandise controller, however, she had a management position, classifying her as a "checklist" employee, and was compensated on a monthly basis. Cosgrove, as assistant merchandise controller, handled service of supply problems, such as determining when products would be shipped, and also maintained reports on accounts receivable, "sold merchandise," and other statistical data. She also supervised electronic data

system employees in the department, and maintained contact with buyers.

In 1976, seven years after Cosgrove was employed, Sears adopted the Hay system of employee job and compensation evaluation. Under the Hay system, checklist employees were evaluated by their supervisor on a scale of zero to nine in fifty-eight categories in eight areas (technical knowledge, knowledge application, administrative effectiveness, work relations, response to superiors, directing subordinates, personal commitment, and source relations). Cosgrove was evaluated in seven of the eight areas. Scores were translated to six performance level ratings (distinguished, commendable, competent, adequate, fair, and unsatisfactory), which established the salary range for the position.

Prior to 1976, Cosgrove was evaluated in five categories: application, cooperation, job knowledge, resourcefulness, and attendance. In her 1973 performance evaluation, in which Cosgrove was rated "outstanding" in three of the five categories, she expressed frustration with her perception that her talents and education were not being utilized by the company. Cosgrove was first evaluated by Hegwood under the Hay system in August, 1976. Her overall performance was rated as "adequate." Based upon her rating, her compensation level was $14,556, only three dollars over the base salary level for her position.[1] After the August evaluation, she expressed frustration with her performance rating in comparison to similarly-situated co-workers, and with the overall rating of "adequate," as she had received four "competent" ratings and only three "adequate" ratings in the seven performance areas in which she was evaluated. She also expressed dissatisfaction with her salary.

At trial, Sears claimed that Cosgrove's poor interpersonal skills had adversely affected her job performance rating. There was testimony at trial that she had problems dealing with buyers, maintained a disorganized office, did not get along with timecard employees, and generated a feeling of ill-will by her manner. Hegwood, Cosgrove's imme-

---

**1.** The salary ranges for Cosgrove's position were $23,286 at the ceiling, $19,405 midpoint, and $14,553 base.

diate supervisor, testified that complaints regarding Cosgrove became progressively worse during the Spring of 1976. On March 11, 1977, Hegwood and Brumfield had a conference with Cosgrove regarding her evaluation, after which, according to Hegwood, her performance became progressively worse. For example, she stopped speaking to Hegwood and communicated with him only through notes.

Cosgrove was evaluated again by Hegwood on October 5, 1977, and received markedly poorer evaluations, with three "adequate" ratings, and four "fair" ratings. Thereafter, Cosgrove filed her first charge of gender discrimination with the EEOC on October 31, 1977, alleging unequal compensation, failure to promote, denial of training, discriminatory job evaluations, and refusal to let her view her personnel file.

Sears' management procedure manual states that an employee must be allowed a deficiency interview in order to provide specific information regarding any deficiencies, and must be informed of specified time periods within which performance should be improved.[2] On December 2, 1977, Brumfield met with Cosgrove and gave her a letter which outlined the areas in which she had received a "fair" rating. The letter stated that she had thirty days in which to improve her performance, but Brumfield extended the time period in which to improve to sixty days, which would have concluded on January 31, 1978. According to the Sears manual, following the December meeting, at least one subsequent meeting should have been scheduled between Cosgrove and Brumfield to discuss her work difficulties—this did not occur.

At the December 2 meeting, Cosgrove requested verification of criticisms of her, and complained of offensive remarks that allegedly were made to her by male co-workers, such as a comment that she should be home barefoot and pregnant and not taking a job away from a man. Cosgrove claimed that there was never any follow-up by Sears as to these matters, although Sears asserts that it investigated all of her harassment allegations. Cosgrove filed a second charge with the EEOC against Sears on January 5, 1978, alleging that her poor evaluation on December 2, 1977, was in retaliation for her first EEOC filing.

There was some disagreement at trial as to when Sears became aware of Cosgrove's EEOC charges. Cosgrove claimed that she had a conversation on November 1, 1977 with the office manager of Department 618, Betty Blake, informing her that she had filed charges with the EEOC, and that Blake later told her that "Sears would offer me a salary increase if I would drop my EEO[C] charge." Hegwood testified that he did not learn of the first EEOC charge until January 1978, when the EEOC sent Sears a copy of her retaliation charge. However, Brumfield, Hegwood's supervisor, earlier had testified in his deposition that he knew as early as mid-December 1977 that Cosgrove had filed EEOC charges against Sears.

Cosgrove was terminated from Sears on February 6, 1978, although the "Reason for Leaving" form for her termination was first prepared on January 24, 1978, one week before her sixty day period to improve would have ended. Following her termination from Sears, Cosgrove conducted a long and thorough job search, sending out hundreds of resumes. Cosgrove claimed that Sears was uncooperative in her job search by not responding to a call for a reference in one instance, and, in 1982, returning an incomplete job reference form. Cosgrove filed an amended charge of post-termination retaliation with the EEOC against Sears on April 22, 1980, alleging that Sears was retaliating against her in her efforts to seek employment elsewhere.

---

**2.** Section 6051 of the manual states that:

Management must make certain that employe[e]s not only have their shortcomings clearly explained but that they are given adequate training for their assignment, a fair opportunity and encouragement to correct existing deficiencies.

Section 6053 of the manual also specifies that at the end of a deficiency interview:

the employe[e] is to be advised that the matter will be discussed again at a specified time. While the time interval will depend on the nature of the problem, in no case should more than three months elapse between interviews.

On June 5, 1981, after the EEOC issued a right to sue letter to Cosgrove, she filed the instant discrimination and retaliation suit against Sears in the United States District Court for the Southern District of New York.[3]

On January 10, 1992, the district court issued a memorandum opinion and order concluding that Cosgrove had demonstrated, by a preponderance of the evidence, that Brumfield's "knowledge of [Cosgrove's] sex discrimination claim against Sears played a motivating role" in the decision to terminate her. *Cosgrove*, No. 81 Civ. 3482, 1992 WL 8718 at *17. The district court also concluded that it was likely that Brumfield and Hegwood were aware of Cosgrove's first EEOC complaint, filed on October 31, 1977, prior to the December 2, 1977 evaluation, based upon her November 1, 1977 conversation with the office manager, Betty Blake. Nevertheless, the district court concluded that Sears was not liable for retaliatory discrimination. The court, relying upon *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), stated that where the employer shows that a legitimate reason for firing an employee exists, and, standing alone, would have induced it to make the same decision, it will not be liable, despite the presence of a discriminatory motive. *Cosgrove*, No. 81 Civ. 3482, 1992 WL 8718 at *18 (citing *Price Waterhouse*, 490 U.S. at 252, 109 S.Ct. at 1792). The court also found that there was no evidence of post-termination retaliation against Cosgrove. *Id.* at *20. Finally, the district court concluded that Cosgrove had failed to prove gender discrimination in compensation or promotion, and that she had failed to prove sexual harassment. *Id.* at *23–24. Judgment was entered on January 23, 1992. Cosgrove filed a timely notice of appeal on January 28, 1992.

## DISCUSSION

■ A district court's Title VII ruling should not be disturbed absent a showing that the district court abused its discretion,

or was "clearly erroneous within the meaning of Fed.R.Civ.P. 52(a)." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 208 (2d Cir.1990) (citing *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *Pullman–Standard v. Swint*, 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982); *Davis v. State Univ. of New York*, 802 F.2d 638, 642 (2d Cir.1986)). This Court will "disturb such findings only when we are 'left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *McAllister v. United States*, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20 (1954) (citations omitted)).

### A. *Cosgrove's Retaliatory Discharge Claim*

#### 1. Cosgrove's *prima facie* case

Title VII of the Civil Rights Act of 1964 prohibits retaliatory termination of employees for opposing alleged discriminatory practices. Section 704(a) of the statute, 42 U.S.C. § 2000e–3(a) (1988), provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

This Court has previously held that the distribution and allocation of burdens of proof in retaliatory discharge claims follow the general disparate treatment analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–26, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). *See Sumner*, 899 F.2d at 208. The plaintiff must make a *prima facie* showing of discrimination, by a preponderance of the evidence. *Id.* This test has been further refined by the Supreme Court's holding in *St. Mary's Honor Ctr. v. Hicks*, —— U.S. ——,

---

**3.** On July 27, 1990, Sears was granted partial summary judgment, pursuant to Fed.R.Civ.P. 56(b), on one charge of retaliation.

113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), which, pursuant to *Harper v. Virginia Dep't of Taxation,* —— U.S. ——, ——, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993), must be applied retroactively to the instant case. *See Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 140–41 (2d Cir.1993). In *Hicks,* the Supreme Court held that a fact finder's rejection of an employer's asserted reason for its actions does not entitle a plaintiff to judgment as a matter of law because the plaintiff at all times retains the ultimate burden of persuasion. —— U.S. at ——, 113 S.Ct. at 2747. Thus, once the "defendant has succeeded in carrying its burden of production, the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant." *Id.* at ——, 113 S.Ct. at 2749. The ultimate question is "whether plaintiff has proven 'that the defendant intentionally discriminated [or retaliated] against [her]'" because, as in the instant case, she engaged in a protected activity. *Id.* (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093).

■ For purposes of establishing a *prima facie* case, Title VII of the 1964 Civil Rights Act is violated when a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause. In addition, Title VII is violated when an employer is motivated by retaliatory animus, even if valid objective reasons for the discharge exist. *Sumner,* 899 F.2d at 209; *see also Davis,* 802 F.2d at 642; *DeCintio v. Westchester County Medical Ctr.,* 821 F.2d 111, n. 8 (2d Cir.), *cert. denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987). Once a *prima facie* case is established by a plaintiff, the burden of production shifts to the employer to demonstrate that a "'legitimate, nondiscriminatory reason'" existed for its action, *Sumner,* 899 F.2d at 209 (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093), although the ultimate burden of persuasion remains with the plaintiff. *Hicks,* —— U.S. at ——, 113 S.Ct. at 2749; *Saulpaugh,* 4 F.3d at 142. "The critical question is whether a plaintiff has proven by a preponderance of the evidence that the defendant intentionally discriminated or retaliated against the plaintiff for engaging in protected activity." *Sumner,* 899 F.2d at 209

(quoting *Wrighten v. Metropolitan Hosps., Inc.,* 726 F.2d 1346, 1354 (9th Cir.1984)).

■ A plaintiff in a section 704(a) retaliation claim must demonstrate, for the purposes of a *prima facie* case, that: (1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff based upon her activity; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer. *Sumner,* 899 F.2d at 208–09 (citation omitted); *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993). To establish that an activity was protected, a plaintiff need only prove that she was acting under a good faith belief that the activity was of the kind covered by the statute. *Sumner,* 899 F.2d at 209. Finally, a plaintiff may establish a causal connection indirectly by "showing that the protected activity was followed by discriminatory treatment ... or directly through evidence of retaliatory animus." *Id.* The facts established at trial show that Cosgrove has met all prongs of the test: (1) Cosgrove filed an EEOC complaint against Sears; (2) Sears was aware of this, as early as November 1, 1977; and (3) Sears did not follow its own procedures for addressing employee performance deficiencies in terminating Cosgrove's employment. Thus, we are persuaded that Cosgrove has made a *prima facie* showing that Sears discharged her—retaliated—because she engaged in a protected activity—i.e., because she filed an EEOC complaint against Sears.

### 2. The district court's application of *Price Waterhouse*

■ After reviewing the evidence of Cosgrove's conversation with the office manager, the resulting low evaluation ratings, the December 2, 1977 letter informing her that she had thirty days to improve her performance, which was extended to sixty days, the violation of the company's employment policy regarding termination of employees and counselling sessions, and, finally, the preparation of her termination letter prior to the end of the sixty day improvement period, the dis-

trict court determined that it was "more likely than not that Brumfield and Hegwood knew Cosgrove had filed a sex discrimination claim against Sears, *and that knowledge influenced the manner and timing of Cosgrove's discharge*." *Cosgrove,* 81 Civ. 3482, 1992 WL 8718 at *15 (emphasis added).

Despite this finding, however, the district court concluded that Sears was not liable because it had proved that it would have discharged Cosgrove anyway. *Id.* at *18. This conclusion was reached by applying *Price Waterhouse,* which held that "the defendant [in an employment discrimination case] may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed [the discriminatory factor] to play such a role." 490 U.S. at 244–45, 109 S.Ct. at 1787–88 (footnote omitted). The court concluded that Brumfield and Hegwood became dissatisfied with Cosgrove's performance and personality flaws, and that those reasons, standing alone, "'would have induced [Sears] to make the same decision.'" *Cosgrove,* No. 81 Civ. 3482, 1992 WL 8718 at *18 (quoting *Price Waterhouse,* 490 U.S. at 252, 109 S.Ct. at 1792).

In *Price Waterhouse,* the Supreme Court stated that "[a]n employer may not ... prevail in a mixed-motives case by offering a legitimate and sufficient reason for its decision *if that reason did not motivate it at the time of the decision.*" 490 U.S. at 252, 109 S.Ct. at 1791 (emphasis added). In the case before us, it is undisputed that Cosgrove was denied an opportunity—the opportunity to have the follow-up counselling and performance evaluations described in the company's manual that was open to all other employees, after she had filed sex discrimination charges with the EEOC against Sears. Once a plaintiff demonstrates that a discriminatory factor "play[ed] a motivating part in an employment decision," the defendant must demonstrate that it would have made the same decision based upon the legitimate factor alone. *Id.* at 244–45, 109 S.Ct. at 1787–88. It is reasonable that the employer "'bear the risk that the influence of legal and illegal motives cannot be separated, because he knowingly created the risk and because the risk was created not by innocent activity but by his own wrongdoing.'" *Id.* at 250, 109 S.Ct. at 1790 (quoting *NLRB v. Transportation Management Corp.,* 462 U.S. 393, 403, 103 S.Ct. 2469, 2475, 76 L.Ed.2d 667 (1983)).

It is clear that there were personality differences between Cosgrove and her supervisors after she transferred to Department 618 as far back as 1974. Nevertheless, given Sears' failure to provide follow-up interviews and counselling, the fact that Sears "jumped the gun" in its preparation of relevant termination papers, and the district court's finding that Sears' supervisors knew appellant had filed a sex discrimination claim, which knowledge influenced the manner and timing of her discharge, we believe that, as a matter of law, Sears' decision to terminate Cosgrove's employment on February 6, 1978, was motivated, at least in part, by an illegitimate reason. *See Price Waterhouse,* 490 U.S. at 252, 109 S.Ct. at 1791–92. The district court erred in finding that Sears would have made the same decision even absent the discriminatory motive, since one cannot know whether the follow-up steps would have improved Cosgrove's performance. *See Simpson v. Diversitech Gen., Inc.,* 945 F.2d 156, 160 (6th Cir.1991) (Title VII was violated where the employee was discharged due to poor employment record, but the employment record was "infected" by the employer's racial bias), *cert. dismissed,* —— U.S. ——, 112 S.Ct. 1072, 117 L.Ed.2d 277 (1992). In short, it cannot be determined whether Sears would have discharged Cosgrove if she had received the manual-mandated follow-up counselling and further evaluation. In *Vaughn v. Edel,* 918 F.2d 517 (5th Cir.1990), the plaintiff, who had a record of low work product and excessive office visits, was denied formal criticism of her work because of her race. *Id.* at 520. The Fifth Circuit found that the plaintiff was the victim of discriminatory discharge because "the same opportunity to improve her performance, and perhaps her relative ranking," which was open to all other employees, was denied to her. *Id.* at 522. In *Vaughn,* the court concluded that the employer must "bear the cost of its lost opportunity to determine whether [the employee discriminated against] might have remained one of the two 'lowest ranked' contract analysts had it not made decisions based on race." *Id.* at 523.

Herein, Sears must bear the cost of its lost opportunity.

An important purpose behind the remedial scheme of Title VII is "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). There is a presumption that victims of discrimination are entitled to "make-whole" relief. *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 764 and n. 21, 766, 96 S.Ct. 1251, 1264, and n. 21, 1265, 47 L.Ed.2d 444 (1976). Here, the district court determined that Cosgrove's filing of the EEOC complaint affected both the timing and manner of her discharge. We conclude that appellant is entitled not only to prevail on her retaliatory discharge claim but also is entitled to remedial relief for the period between when she was discharged based upon the discriminatory factor, and when she would have been discharged based upon her performance alone. Accordingly, we reverse the determination of the district court as to Cosgrove's retaliatory discharge claim, and remand for a calculation of her damages.[4]

### B. Cosgrove's Remaining Claims

#### 1. Cosgrove's gender discrimination claim

■ Under Title VII, discrimination can be demonstrated through evidence of either 'disparate treatment' or 'disparate impact.' To show 'disparate treatment,' the plaintiff is "required to prove that the defendant had a discriminatory intent or motive." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986, 108 S.Ct. 2777, 2784, 101 L.Ed.2d 827 (1988). 'Disparate impact' is based upon the premise "that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." *Id.* at 987, 108 S.Ct. at 2785. The evidence in 'disparate impact' cases "usually focuses on statistical

disparities, rather than specific incidents, and on competing explanations for those disparities." *Id.* Cosgrove submitted evidence for both tests.

■ During discovery, Cosgrove focused on four male employees in her department. At trial, she sought to support her claim of sex discrimination in compensation and promotions through a comparison with the compensation and advancement of other male Sears employees.[5] Sears' expert witness, Dr. Joan Haworth, performed her own analysis of employees comparable to Cosgrove in compensation and promotion. The information that Sears provided revealed that: (1) during the year 1976–77, women in similar positions to Cosgrove averaged a 13.0% salary increase, as opposed to Cosgrove's 7.0%, and 8.4% for men; (2) Cosgrove made checklist status in the longest period of time as compared to all but one of the five women chosen by Dr. Haworth who were similarly situated at Sears; and (3) of the five persons in Departments 607 and 618 who were promoted to a checklist position, both male and female, all achieved the position faster than Cosgrove, the average being two years. Thus, statistically, Cosgrove failed to demonstrate gender discrimination through either 'disparate treatment' or 'disparate impact' with regard to pay increases and promotions, since all but one of the similarly situated employees compared with her during the trial, both male and female, were promoted faster than Cosgrove, and received correspondingly higher salaries. Accordingly, the judgment of the district court regarding Cosgrove's gender discrimination claim is affirmed.

#### 2. Cosgrove's sexual harassment claim

■ Cosgrove based her claim of sexual harassment on remarks allegedly made by two male co-workers, and an offensive note received from an anonymous source.

---

**4.** Although Cosgrove was discharged on February 6, 1978, her back pay award should not be difficult to calculate. Sears' management procedure manual specifies the number of interviews to be conducted prior to termination of an employee. *See* footnote two *supra*.

**5.** During discovery, Cosgrove focused upon Ed Behan, Bill Gurney, John Larson, and Harry Humm. At trial, however, she offered the personnel records of Joseph Brandt, Robert Murphy, and Neil Friedman into evidence. Brandt, Murphy and Friedman all received higher performance ratings than Cosgrove.

While these events are unacceptable, they do not rise to the level required to make a *prima facie* case of sexual harassment. As the district court correctly found, the harassment must be sufficiently severe or pervasive so as to alter the conditions of the victim's employment and create an abusive working environment. This principle was recently reaffirmed by the Supreme Court in *Harris v. Forklift Sys., Inc.,* — U.S. —, —, 114 S.Ct. 367, 368, 126 L.Ed.2d 295 (1993) ("When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' ... that is 'sufficiently severe or pervasive [so as] to alter the conditions of the victim's employment and create an abusive working environment,' ... Title VII is violated.") (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 2404–05, 2405, 91 L.Ed.2d 49 (1986)). In order to establish a *prima facie* case of sexual harassment based upon a "hostile work environment," a plaintiff must demonstrate: (1) that she is a member of a protected group; (2) that she was the subject of unwelcome advances; (3) that the harassment was based upon her sex; and (4) that the harassment affected a term, condition or privilege of employment. *See Meritor,* 477 U.S. at 63–69, 106 S.Ct. at 2403–07. A plaintiff must also demonstrate in a "hostile work environment" case that "the supervisor's [or co-worker's] actions should be imputed to the employer." *Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.,* 957 F.2d 59, 62 (2d Cir.1992).

Cosgrove failed to establish a *prima facie* case. While Cosgrove is clearly a member of a protected group, and was the subject of unwelcome remarks and advances based upon her gender, she failed to demonstrate that (a) the alleged harassment affected a term, condition or privilege of her employment with Sears, or (b) that the actions of her co-workers should be imputed to Sears. Accordingly, she failed to prove sexual harassment, and that portion of the judgment of the district court is affirmed.

3. Cosgrove's post-termination retaliation claim

Cosgrove's claim of post-termination retaliation is without merit. While she claims that Sears 'black-listed' her, she offered no substantive evidence or proof that Sears in any way lied about her performance at Sears. The district court correctly concluded that this argument was "strained and unpersuasive." Therefore, the judgment of the district court is affirmed on this point.

## CONCLUSION

With regard to the remaining issues Cosgrove raises on appeal, we are not persuaded that they have merit. For the foregoing reasons, we affirm the district court's judgment dismissing Cosgrove's claims of gender discrimination, sexual harassment, and post-termination retaliation. We reverse the district court's judgment regarding Cosgrove's retaliatory discharge claim, and remand for appropriate proceedings as to damages.