**Leslie Hausner MONTANILE,**
**Plaintiff,**

v.

**NATIONAL BROADCAST COMPANY,**
**and Rosalyn Weinman,**
**Defendants.**

**No. 00 Civ. 8946(VM).**

United States District Court,
S.D. New York.

July 18, 2002.

Glenn B. Allyn, New City, NY, for plaintiff.

Howard L. Ganz, New York City, for defendants.

## DECISION AND AMENDED ORDER

MARRERO, District Judge.

Plaintiff Leslie Hausner Montanile ("Montanile") commenced the present action alleging employment discrimination and retaliation in violation of 42 U.S.C. § 2000e–2(a) ("Title VII"), and related state law causes of action. Defendants National Broadcasting Company, Inc. ("NBC") and Rosalyn Weinman ("Weinman") moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, on the grounds that Montanile's claims are insufficient to constitute violations of the relevant federal civil rights laws. On June 27, 2002, the Court issued an Order granting the motion for summary judgment and indicating that the Court's reasoning would be detailed in a subsequent Order. The June 27, 2002 Order is hereby amended to incorporate the reasons set forth below as the basis for the Court's granting defendants' motion for summary judgment.

## I. BACKGROUND

In April 1997, Montanile began working for NBC as a temporary employee in the company's Employee Relations Department. In July 1997, Weinman, the head of NBC's Broadcast Standards Department, offered Montanile a temporary position as her assistant for several days while Weinman was on a business trip. Upon her return, Weinman offered Montanile a regular staff position as an executive assistant. The parties differ in their accounts of the conversation in which Weinman offered Montanile the position. Montanile alleges that Weinman said that she would have a "fabulous" career at NBC, offered her a yearly salary of $63,000, and committed to promoting Montanile to a position of vice president after two years. (Deposition of Leslie Hausner Montanile, dated Apr. 25, 2001 ("Montanile Dep."), at 35, 40,

44.) Weinman maintains that while she told Montanile that she might have a fabulous career at NBC, she neither offered her a salary of $63,000, nor committed to promote her to vice president after two years. (Deposition of Rosalyn Weinman, dated May 23, 2001 ("Weinman Dep."), at 48–54.) Regardless of the parties' contentions, a July 11, 1997 letter from NBC's Employee Relations Department indicates that Weinman was offered a job as an executive secretary at a salary of $45,000. The letter contains no mention of a promotion to vice president. (Montanile Dep., at 45–47.)

Montanile was thirty-two years old and had a law degree when she accepted her position at NBC. She was married in August 1997. Montanile and Weinman spoke on more than one occasion about Montanile's desire to start a family, especially when Weinman's mother was in the office.

Throughout Montanile's tenure at NBC, she consistently received exemplary performance reviews from Weinman, as well as several raises and special monetary awards. Additionally, Weinman paid Montanile with expensive gifts for assisting Weinman in writing a novel. Montanile asserts that she made substantive corrections and suggestions regarding the novel. (Montanile Dep., at 84–85.) Weinman maintains that Montanile merely typed handwritten notes. (Weinman Dep., at 16, 18.) Furthermore, Montanile claims that she edited the novel during the workday at NBC. (Montanile Dep., at 85.) Weinman contends that she believed that Montanile transcribed the novel after work hours. (Weinman Dep., at 23.)

The parties also differ in the description of Montanile's duties during her employment. Montanile alleges that Weinman gave her additional responsibilities beyond secretarial duties, such as working on the

television show "Law and Order", in support of Montanile's belief that in fact she would be promoted to vice president after two years. (Montanile Dep., at 127.) Weinman asserts that while Montanile may have read and typed scripts for "Law and Order", she never worked on the show. (Weinman Dep., at 74, 76.) Instead, Weinman alleges that Montanile performed secretarial duties exclusively, such as maintaining her calendar and answering phones. (Weinman Dep., at 14.)

Beginning in the summer of 1998, NBC instituted cost-cutting measures, which included restrictions on overtime work. It was during July 1999 that Montanile stopped earning overtime pay.

Montanile alleges that in May 1999 Weinman informed her that she would not be able to promote her as promised, and began to help Montanile locate a new job. Weinman does not dispute that she attempted to find Montanile new employment.

In the spring of 1999, Weinman became the head of NBC's East Coast Entertainment, a position she assumed in addition to her duties as head of the Broadcast Standards Department. She also retained, as a second executive assistant, Matt Levine ("Levine"), the executive secretary of the former head of East Coast Entertainment. Montanile alleges that Weinman replaced her with Levine, a male of lesser education and experience, and that Levine received overtime pay while Montanile, as Weinman had told her, could not. (Plaintiff's Memorandum of Law in Support of Her Opposition to the Moving Defendant's Rule 56 Motion, dated Oct. 22, 2001 ("Pl.'s Mem."), at 2–3.) Furthermore, Montanile contends that Levine took over her desk and many of the duties and responsibilities previously assigned to her, leaving her the more mundane tasks. (Montanile Dep., at 142, 145.) Eventually,

Weinman moved Montanile back to her old desk, where she performed only administrative tasks. (*Id.* at 154.) Weinman, however, alleges that Levine sat at Montanile's desk for only a brief time until he became accustomed to his new responsibilities and environment. (Weinman Dep., at 124.) Furthermore, she alleges that she had planned to expand her office so that Montanile's new desk would have been right in front of her office. (*Id.* at 102.) Additionally, Weinman claims that she did not diminish Montanile's tasks and that the only responsibilities Montanile ever performed were administrative in nature. (*Id.* at 14–15.)

On September 13, 1999, Montanile took her grievances to the company's Employee Relations Department. There, she spoke to Alex McCauley ("McCauley"). According to McCauley, Montanile was very agitated, and would only say that the situation would "cost NBC six figures." (Deposition of Alexandra McCauley, dated June 26, 2001 ("McCauley Dep."), at 7, 10.) Montanile eventually told McCauley that she was performing tasks for Weinman that violated company policy and that the promise Weinman made to promote her to vice president remained unfulfilled. (*Id.* at 11–12.) She also told McCauley that Weinman was pushing her out of her job while bringing in Levine. (*Id.* at 13–14.) McCauley arranged a meeting for September 21, 1999 between herself, Montanile, and Patricia Langer ("Langer"), NBC's inside employment counsel, as well as Howard Gantz, NBC's outside counsel. McCauley declared that the Executive Vice President of Employee Relations, Ed Scanlon, specifically instructed all parties involved not to speak to Weinman about Montanile's complaint. (*Id.* at 24.)

On the morning of September 21, 1999, Montanile and Weinman had a verbal altercation in Weinman's office. Montanile

maintains that Weinman threw her out of the office, cursed at her, and threatened to call security if she did not leave. (Montanile Dep., at 170–71.) Montanile maintains that Weinman fired her during their dispute on September 21, 1999 because Weinman was aware of her complaint to Employee Relations, and because Weinman believed that Montanile wanted to start a family. (*Id.* at 171–73, 180–82.) While Weinman does not dispute that a verbal altercation occurred on that day, she maintains that she was unaware of Montanile's complaint to Employee Relations and that she fired Montanile because of a decline in her performance. (Weinman Dep., at 60, 132–33.) This action followed.[1]

## II. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, to survive a motion for summary judgment, a plaintiff must present sufficient evidence demonstrating the existence of a genuine issue of material fact for trial. "The plaintiff must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Additionally, courts must "assess the record in the light most favorable to the nonmovant and ... draw all reasonable inferences in [the nonmovant's] favor." *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 177 (2d Cir.1990).

In Title VII cases where there are no allegations or direct evidence of acts of discrimination, courts apply the three-part burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to rule upon a motion for summary judgment. *See also Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir.2000). First, the plaintiff must demonstrate a *prima facie* case of discrimination or retaliation. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Assuming that plaintiff successfully satisfies that burden, the defendant may rebut the *prima facie* case by proffering a legitimate, non-discriminatory reason for the employment action. *Id.* at 506–07, 113 S.Ct. 2742. The plaintiff, in turn, must then present evidence that the employer's articulated reason is a mere pretext for unlawful discrimination. *Id.* at 507–08, 113 S.Ct. 2742. Throughout this framework, the ultimate burden of persuasion of demonstrating intentional discrimination remains with the plaintiff. *Id.* at 507, 113 S.Ct. 2742.

Although at times the parties offer different versions of certain of the events involved in this case, these differences are not material so as to preclude summary judgment as a matter of law. Courts must grant a motion for summary judgment when "no *genuine* issues of *material* fact" exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be

---

1. Montanile's complaint named both NBC and Weinman as defendants. In response to their objections that a Title VII action cannot lie against Weinman in her individual capacity, *see Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir.1995), *abrogated on other grounds, Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Montanile in her moving papers agreed to withdraw her federal claims against Weinman. (Pl.'s Mem., at 23.) Accordingly, summary judgment will be entered dismissing the action against Weinman on this ground. Plaintiff also voluntarily dismissed with prejudice her breach of contract claims. (Pl.'s Mem., at 1.)

counted." *Id.* As the conflicting descriptions of events relate solely to background matters unrelated to the operative factual events in this litigation, they do not raise genuine issues of material fact.

## III. DISCUSSION

### A. TITLE VII

In order to establish a *prima facie* case of unlawful discrimination, a plaintiff in a Title VII action must show that (1) she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See id.* at 506, 113 S.Ct. 2742.

Montanile alleges that, in violation of Title VII, a male replaced her, absorbed her duties, and received overtime that was not made available to her. She further asserts that Weinman's actions in firing Montanile were motivated by the belief that Montanile would start a family.

█ The parties do not dispute that Montanile is a member of a protected class or that she was qualified for her position. (Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment, dated Sept. 7, 2001, at 16 n. 9.) At issue, however, is whether an adverse employment action occurred and whether the situation gives rise to an inference of unlawful discrimination.

Montanile asserts that Weinman adversely affected her employment when she replaced her with Levine, gave her desk to Levine, and denied her overtime. However, mere changes in working conditions that cause some inconvenience do not constitute adverse employment actions as a matter of law. *See Smith v. AVSC International, Inc.,* 148 F.Supp.2d 302, 312–13 (S.D.N.Y.2001). "[T]he mere fact that an employee['s] ... job responsibilities have changed is not sufficient in itself to show an adverse change in working conditions." *Cooper v. New York State Dep't of Human Rights,* 986 F.Supp. 825, 828 (S.D.N.Y. 1997). A plaintiff must show that the conduct complained of materially "affected the terms, privileges, duration, or conditions of ... employment." *Id.* (quoting *Dortz v. City of New York,* 904 F.Supp. 127, 156 (S.D.N.Y.1995)). The specific conduct of which Montanile complains—that she lost overtime pay along with many of her colleagues, experienced a modification of her duties and moved to a different desk—simply does not rise to the level necessary to constitute a materially adverse employment action.

█ Finally, Montanile fails to present sufficient evidence demonstrating the existence of circumstances that give rise to an inference of discrimination in the terms and conditions of her employment. She received consistently favorable treatment throughout her employment with NBC, both before and after she mentioned her desire to start a family. To the extent that Montanile experienced changes in her work environment, there is nothing on the record linking those changes to the type of impermissible discrimination she asserts. In fact, although it appears Montanile experienced some overall reduction in wages as a result of NBC's cost-cutting measures, there is evidence in the record that overtime pay was nevertheless available on an ad hoc basis regardless of gender. While Montanile asserts that she was denied overtime because of her gender and her desire to have children, Jennifer Rose, a woman who had recently given birth, continued to receive overtime during this period. (Montanile Dep., at 151; Weinman Dep., at 38–39.)

Montanile's claim that her termination violated Title VII also presents no circum-

stances giving rise to an inference of discrimination. Montanile "offers no support for her allegations ... other than her own speculations and assumptions." *Umansky v. Masterpiece International, Ltd.*, No. 96 Civ. 2367, 1998 WL 433779, at *4 (S.D.N.Y. July 31, 1998). She herself says in her deposition that the reasons she presents as the motivation for Weinman's behavior are based upon her own beliefs. (Montanile Dep., at 181–82.) In contrast to Montanile's unsupported personal beliefs and unsubstantiated speculation, Weinman asserts that she was unaware of Montanile's complaint to Employee Relations, and this testimony is supported by that of McCauley and Brewer. (McCauley Dep., at 23–24; Deposition of Andrew Brewer, dated June 26, 2001, at 40.) McCauley testified that both she and Langer were instructed by NBC's Executive Vice President of Employee Relations, Ed Scanlon, not to discuss Montanile's complaint with Weinman. When asked whether she had done so, she stated categorically "absolutely not." (McCauley Dep., at 23–24.) Weinman could not discriminate against Montanile in connection with a complaint of which she was unaware. Therefore, no reasonable inference of unlawful discrimination could be drawn. Accordingly, Montanile has failed to establish her *prima facie* case of discrimination. Furthermore, Weinman replaced Montanile with Joyce Amormino, a woman of similar age, and continued to have two assistants after Montanile's discharge. (Weinman Dep., at 24–25, 40–41.) That a plaintiff is replaced by another in the same protected class weighs heavily against the inference that she suffered discrimination. *See Umansky*, 1998 WL 433779, at *3.

■ Even if Montanile had succeeded in establishing the required *prima facie* case of discrimination, NBC has proffered legitimate, non-discriminatory reasons for their actions that rebut any presumption of a discriminatory animus. When Weinman was promoted to the position of head of East Coast Entertainment, she merely absorbed her predecessor's executive assistant, Levine, along with the additional responsibilities of the position. Weinman explains that Levine temporarily sat at Montanile's desk so that he could adjust to his new position. She also asserts that plans for an office expansion existed that would have placed Montanile's new desk just outside her office door. Furthermore, Montanile concedes that in fact she later moved back to her old desk. On this record, the changes that Montanile asserts she experienced cannot reasonably be determined to be discriminatory in nature.

■ Weinman and NBC proffer non-discriminatory reasons for the cessation of Montanile's overtime as well. NBC instituted cost-cutting policies in 1998, which Montanile admits affected every department, including Weinman's. As a result, Weinman staggered the hours of her assistants. Weinman asserts that she offered Montanile the first choice as to an early shift or a later shift, and Montanile chose the former. Those who worked later shifts, not earlier ones, were allowed to work some overtime hours as needed.

When a defendant in a Title VII case offers plausible, non-discriminatory explanations for alleged discriminatory conduct, the burden shifts a final time to the plaintiff to show that the proffered reasons are pretextual. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817. Here, Montanile offers no meaningful evidence to demonstrate discriminatory animus or to substantiate any pretext on the part of NBC and Weinman. Therefore, the defendants' motion for summary judgment is granted as to Montanile's claim of discrimination under Title VII.

## B. *RETALIATION*

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must prove that (1) she engaged in protected activity; (2) her employer was aware of this activity; (3) an adverse employment action occurred; and (4) a causal connection existed between the protected activity and the adverse employment action. *See Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir.1993).

Montanile alleges that Weinman fired her on September 21, 1999 in retaliation for her initial September 13, 1999 complaint to Employee Relations.

To fall within the scope of Title VII, the complaining employee must participate in protected activity. Under the statute, it is unlawful "for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." *Clark County School Dist. v. Breeden*, 532 U.S. 268, 269, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (quoting 42 U.S.C. § 2000e–3(a)).

■ When Montanile initially spoke to McCauley on September 13, 1999, McCauley was under the impression that the emphasis of her complaint was that Weinman assigned certain tasks that violated company policy. (McCauley Dep., at 11). While Montanile did mention the circumstances surrounding Levine, McCauley understood her complaint as being focused on the improper tasks. (*Id.*) Complaints regarding violation of employer policies unrelated to impermissible discrimination do not fall within the scope of Title VII, and, therefore, do not qualify for protection under the statute. A simple dispute between an employer and employee about the specific scope of an employee's duties is not related to protected activity under Title VII unless that dispute somehow touches upon the aims of Title VII.

■ Moreover, Montanile's *prima facie* case of retaliation fails because she presents no evidence to demonstrate that Weinman was aware of her alleged discrimination complaint to Employee Relations. Weinman specifically stated that she had no knowledge of Montanile's complaint to Employee Relations prior to firing her. (Weinman Dep., at 133, 137–38). Furthermore, McCauley stated that she did not inform Weinman of the complaint until after Weinman had terminated Montanile, and that those who were aware of the complaint had been specifically instructed not to discuss the matter with Weinman. (McCauley Dep., at 23–24.) Montanile offers only her own unsubstantiated belief that Langer must have informed Weinman of her complaint because Langer and Weinman allegedly had several conversations during the week before she was fired. Such unsupported speculation is insufficient to establish Weinman's awareness of any allegedly protected activity. Under these circumstances, Montanile likewise cannot establish that the adverse employment action—her discharge by Weinman on September 21, 1999—was causally connected to her complaint to Employee Relations on September 13, 1999.

■ Even if Montanile had established a *prima facie* case of retaliation, Weinman proffers a neutral, non-discriminatory explanation for Montanile's discharge. *See St. Mary's Honor Ctr.*, 509 U.S. at 506–07, 113 S.Ct. 2742. Weinman asserts that Montanile's performance declined during the summer of 1999, that she was frequently absent from her desk when called, that she did not want to perform her stan-

dard secretarial duties because she felt that they were beneath her, and that she was not following through on her responsibilities. (Weinman Dep., at 60.) In the days preceding her discharge, Montanile had informed Weinman that Weinman could do certain assignments herself. (*Id.* at 137.)

Under *McDonnell Douglas,* after a defendant presents a plausible, neutral, and non-discriminatory motivation for an adverse employment action, the plaintiff must show evidence that the proffered reason is pretextual. *See* 411 U.S. at 793, 93 S.Ct. 1817; *St. Mary's Honor Ctr.,* 509 U.S. at 507–08, 113 S.Ct. 2742. Montanile offers no convincing evidence to support her contention that Weinman's proffered reason is pretextual. Consequently, her retaliation claim must fail.

### C. *RELATED STATE CLAIMS*

Montanile asserts that Weinman remains individually liable under New York State Human Rights Law, N.Y. Exec. L. § 296 ("NYHRL"). New York courts require the same standard of proof for claims brought under the NYHRL, and the claims under both may be analyzed under the same standard. *See Cruz v. Coach Stores, Inc.,* 202 F.3d 560, 565 n. 1 (2d Cir.2000). Because Montanile failed to establish the requisite *prima facie* case under Title VII, she likewise fails to establish a claim under the NYHRL.

As to her breach of contract claims against Weinman and NBC, Montanile voluntarily withdrew them, and they are dismissed with prejudice.

Having found that summary judgment must be granted on Montanile's Title VII claims, the Court declines to exercise supplemental jurisdiction over the balance of her state law claims for fraud and fraudulent inducement. *See* 26 U.S.C. § 1367(c)(3).

### CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the Court's Order of June 27, 2002 is amended to incorporate the discussion set forth in this Decision and Amended Order; and it is further

**ORDERED** that, as plaintiff has voluntarily withdrawn her Title VII claim against defendant Weinman, as well as her breach of contract claim, those claims are dismissed with prejudice; and it is further

**ORDERED** that NBC's motion for summary judgment is GRANTED, and Montanile's federal claims under 42 U.S.C. 2000e, *et seq.,* are dismissed; and it is finally

**ORDERED** that the Clerk of Court is directed to close this case.

**SO ORDERED.**