Thomas J. TRIOLA, Plaintiff,

v.

John SNOW, Secretary of the Treasury of the United States of America, Defendant.

No. CV–01–1603 (TCP)(WDW).

United States District Court, E.D. New York.

March 2, 2004.

Anthony C. Darienzo, Huntington Station, NY, for Plaintiff.

Vincent Lipari, United States Attorney's Office, Central Islip, NY, for Defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

This action was brought by Thomas J. Triola ("Plaintiff") against John Snow, Secretary of the United States Treasury ("Defendant").[1] The Plaintiff, a retired Special Agent formerly employed by the United States Customs Service ("U.S.Customs"), alleges that he was not selected to the best qualified lists for two vacancy announcements made in July 1997 and September 1997, because of age discrimination. In addition, the Plaintiff claims that his supervisor, Joseph King ("King"), retaliated against him for participating in the Equal Employment Opportunity ("EEO") process to contest his non-selection to the best qualified lists.

Before the Court is one motion:

1. Defendant moves pursuant to Fed. R.Civ.P. 56(c) for summary judgment dismissing the Plaintiff's complaint, consisting of two claims:

> (I) Plaintiff alleges discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621; and

---

1. This action was originally brought against Paul H. O'Neill, in his official capacity as Secretary of the Treasury of the United States of America. However, since Mr. O'Neill has been replaced, his successor, John Snow, is automatically substituted as the Defendant in this action. *See* Fed.R.Civ.P. 25(d) ("When a public officer is a party to an action in his official capacity and ... ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party"). *Id.*

(ii) Plaintiff alleges retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C.2000e, et seq., ("Title VII").

For the foregoing reasons, the Defendant's motion should be GRANTED as to the first claim and DENIED as to the second claim.

## BACKGROUND

### 1. July 1997 Vacancy Announcement

In July 1997, U.S. Customs issued a vacancy announcement soliciting interested candidates for positions at the GS–14 level. At the time of this announcement, the Plaintiff was 47 years old. The Plaintiff and each of the other applicants submitted a written application to a three-member panel. The panel then reached a consensus on each applicant's score and gave the raw scores to Human Resources. Human Resources tabulated the raw scores, ranked the applicants and made best qualified lists for various job locations based on these scores. Three best qualified lists were compiled for the New York area but the Plaintiff's scores were not high enough to place him on any of the three.

The names and ages of the persons on the best qualified list for Long Island, New York were:

| | | |
|---|---|---|
| 1. | Doyle, Dennis | 44 |
| 2. | Britt, Mark | 47 |
| 3. | Dalessandro, Salvatore | 40 |
| 4. | Moran, Michael | 44 |
| 5. | McAndrew, James | 36 |
| 6. | Kadluboski, Linda | 38 |
| 7. | Brent, Thomas | 42 |
| 8. | Anaipakos, George | 49 |
| 9. | Smith, Kevin | 40 |
| 10. | Kacersoky, Edward | 42 |

Chosen: Doyle, Dennis 44

The names and ages of the persons on the best qualified list for JFK Airport, New York were:

| | | |
|---|---|---|
| 1. | Stella, Patricia | 42 |
| 2. | Doyle, Dennis | 44 |
| 3. | Britt, Mark | 47 |
| 4. | Lorenti, Mark | 36 |
| 5. | Dalessandro, Salvatore | 40 |
| 6. | Coschignano, Anna Maria | 41 |
| 7. | Moran, Michael | 44 |
| 8. | Morrisey, Deborah | 32 |
| 9. | McAndrew, James | 36 |
| 10. | Kadluboski, Linda | 38 |
| 11. | Brent, Thomas | 42 |
| 12. | Anaipakos, George | 49 |

Chosen: Brent, Thomas 42

The names and ages of the persons on the best qualified list for New York City, New York were:

| | | |
|---|---|---|
| 1. | Stella, Patricia | 42 |
| 2. | Lorenti, Mark | 36 |
| 3. | Dalessandro, Salvatore | 40 |
| 4. | Coschignano, Anna Maria | 41 |
| 5. | Chen, Nelson | 37 |
| 6. | Moran, Michael | 44 |
| 7. | Morrisey, Deborah | 32 |
| 8. | McAndrew, James | 36 |
| 9. | Kadluboski, Linda | 38 |
| 10. | Caso, Thomas | 43 |
| 11. | Brent, Thomas | 42 |
| 12. | Anaipakos, George | 49 |
| 13. | Smith, Kevin | 40 |

| Chosen: | Caso, Thomas | 43 |
|---|---|---|
| | Stella, Patricia | 42 |
| | Kadluboski, Linda | 38 |
| | Chen, Nelson | 37 |

On September 19, 1998, the Plaintiff filed an EEO complaint, alleging discrimination "as it is believed no one over the age of 45 made the best qualified list or was selected for any positions covered by the [July 1997 vacancy] announcement." (Def. Local Rule 56.1 Statement at 20). The best qualified lists however, were based solely on the scores given by the panel members and the Plaintiff has admitted that "other than suspicions," he has no information that U.S. Customs personnel kept older employees off the best qualified lists. (Def. Local Rule 56.1 Statement at 22).

### 2. September 1997 Vacancy Announcement

In September 1997, U.S. Customs issued a vacancy announcement for Criminal Investigator positions at various nationwide locations, including New York. This time, the application process involved a series of multiple choice questions. Each applicant answered questions by darkening the "bubble" next to the response selected. These "bubble" sheets were then graded mechanically, without any personal evaluation of, or contact with, any applicant. The best qualified lists were based solely on the applicants' scores on the "bubble" sheet applications.

In June 1998, the Plaintiff again learned that his score was not high enough to make any of the best qualified lists. The Plaintiff waited, however, until March 14, 1999 to file an EEO complaint. This complaint was subsequently dismissed because of the Plaintiff's failure to timely contact an EEO counselor within forty-five days after notice of the alleged discrimination. The three employees eventually selected for the New York positions were the same age as the Plaintiff.

### 3. Acts of Retaliation

The Plaintiff also claims that from May 1998 to September 1998, his supervisor, King, took the following actions to retaliate against him for his EEO complaints:

1. *May 1998:* Plaintiff was subjected to hostile questioning by King concerning certain pending cases; Plaintiff noted a marked change in King's demeanor and attitude toward him; King suggested Plaintiff transfer to JFK Airport;

2. *August 1998:* After Plaintiff applied for a third vacancy announcement, King failed to complete part of the application that required supervisor comments;

3. *September 1998:* When King finally did fill out Plaintiff's application, Plaintiff's scores were one full letter grade lower than the marks given by King on the previous year's application.

(Pl. Mem. of Law in Opp. at 8–11).

The Defendant counters, however, that King was not aware of the Plaintiff's EEO complaints until November 27, 1998, when King was contacted by an EEO investigator. Although the Plaintiff has no concrete knowledge that King actually knew about the Plaintiff's EEO complaints before November 27, 1998, the Plaintiff claims that he made his dissatisfaction with the vacancy process no secret around the workplace. (Pl. Mem. of Law in Opp. at 6).

On July 27, 1999, the Plaintiff filed a third claim with the EEO, alleging that King took even more retaliatory actions after being contacted about the Plaintiff's claims by an EEO investigator:

1. *May 1999:* King removed Plaintiff from the Electronic Crime Task Force;

2. *December 1999:* Despite Plaintiff's requests to the contrary, King transferred Plaintiff to JFK; King removed Plaintiff from a high profile case investigation.

(Pl. Mem. of Law in Opp. at 11–13).

### DISCUSSION

A motion for summary judgment may not be granted unless the court determines that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Castle Rock Entm't, Inc. v. Carol Publ'g Group,* 150 F.3d 132, 137 (2d Cir. 1998). If there is any evidence in the record from which a reasonable inference

could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994).

The Plaintiff's first claim, that both the July and September 1997 vacancies were filled in violation of the ADEA, is not supported by any evidence and therefore, the Defendant's motion for summary judgment should be granted. The Plaintiff's second claim, however, for retaliation under Title VII, is rife with material factual disputes between both sides and therefore, is inappropriate for summary judgment.

## A. The ADEA Claim

Discrimination cases brought pursuant to the ADEA utilize a three–stage order of proof articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). First, the initial burden is on the plaintiff to establish a *prima facie* case of disparate treatment. *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 316 (2d Cir.1999). Once the plaintiff successfully establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, non-discriminatory justification for his actions. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509–511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). If the employer is able to articulate such a justification, "the inference of discrimination raised by the *prima facie* case then drops out and the plaintiff must prove by a preponderance of the evidence that the employer's proffered reason is merely a pretext for discrimination." *Brennan*, 192 F.3d at 317 (citing *St. Mary's*, 509 U.S. at 508–11, 113 S.Ct. 2742).

■ In order to make out a *prima facie* case of disparate treatment, a plaintiff must show: "(1) [he] was within the protected age group, (2)[he] was qualified for [his] position, (3)[he] suffered an adverse employment action, and (4) that action took place in circumstances giving rise to an inference of discrimination." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 76–77 (2d Cir.2001).

■ Here, the Plaintiff simply is not able to satisfy the fourth factor, as the July and September vacancies did not take place in circumstances giving rise to an inference of discrimination. Indeed, both best qualified lists for the two vacancies were generated through the use of neutral testing procedures and neither vacancy application called for applicants to disclose their date of birth. The three–member panel for the July 1997 vacancy had no contact with the applicants and scored each person entirely on a written application.

Moreover, the application for the September 1997 vacancy consisted entirely of a "bubble" test and applicants were scored solely on their responses. Furthermore, the July 1997 best qualified lists for the New York area contained applicants who were the Plaintiff's age and older, and three applicants chosen for the September 1997 vacancies were all the same age as the Plaintiff. (Def. Mem. of Law at 6; Def. Local Rule 56.1 Statement at 32). Finally, the Plaintiff offers no proof of any discrimination beyond mere suspicions and does not contradict the neutrality of the July and September 1997 vacancy procedures in his Local Rule 56.1 statement.

The Plaintiff, however, argues that summary judgment is inappropriate because "questions remain as to how plaintiff's age affected his ability to obtain a promotion." (Pl. Mem. of Law in Opp. at 14). To that end, the Plaintiff alleges that the Defendant must produce a complete listing of

the ages of all the applicants for the July and September 1997 vacancies, not just the ages of the applicants on the best qualified lists. *See e.g., Taggart v. Time Inc.*, 924 F.2d 43, 46 (2d Cir.1991) ("The inference of discrimination may be shown by direct evidence, statistical evidence or circumstantial evidence").

 Even assuming, *arguendo*, that the Defendant's failure to produce this list raises a material issue of fact, the Defendant's legitimate, nondiscriminatory explanation rebuts the Plaintiff's case, and is uncontroverted in the Plaintiff's Local Rule 56.1 statement. Once a legitimate explanation is proffered by a defendant, any presumption of discrimination from establishment of a *prima facie* case then "drops from the picture." *St. Mary's*, 509 U.S. at 510–11, 113 S.Ct. 2742. Here, the Defendant explains that the Plaintiff did not make either best qualified list for the July and September 1997 vacancies because he did not achieve a high enough score under neutral testing procedures. As explained *supra*, both the July and September 1997 testing processes were neutral and based solely on written applications and tests. The Plaintiff simply failed to score high enough on these tests and offers no contrary evidence, other than suspicions, that age discrimination played a factor in his exclusion from the best qualified lists.

 The Plaintiff is also not able to meet the third step of the *McDonnell Douglas* burden-shifting analysis, offering evidence that Defendant's explanation is mere pretext for actual discrimination. A plaintiff must "produce not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by

the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action.]' " *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996) (quoting *Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir.1994)). Again, the Plaintiff here offers no evidence to the contrary, other than suspicions, that he was not selected to the best qualified lists for the July 1997 and September 1997 vacancy announcements due to age discrimination. Therefore, as there are no material triable issues of fact, the Defendant's motion for summary judgment on the Plaintiff's first claim should be granted.[2]

## C. The Retaliation Claim

██ In order to make out a *prima facie* claim for retaliation under Title VII, a plaintiff must show that: 1. he engaged in a protected activity; 2. the employer was aware of the protected activity; 3. the employer took adverse employment action; and 4. a casual connection exists between the protected activity and the adverse action. *See Sumner v. United States Postal Svc.*, 899 F.2d 203, 208–09 (2d Cir.1990); *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir.1993).

In the Plaintiff's first set of retaliation claims, from May to September 1998, summary judgment is inappropriate because both parties are in disagreement about a material fact, namely, whether the Plaintiff's supervisor, King, knew about the Plaintiff's EEO complaints. As explained above, the Defendant claims that King did not know about the Plaintiff's EEO complaints until November 27, 1998. Thus, there was no nexus between the Plaintiff's protected activity and the "retaliatory" ac-

---

**2.** Because summary judgment is appropriate on the basis of the Plaintiff's substantive claim under the ADEA, there is no need for this Court to address the Defendant's alternative argument for dismissal, the Plaintiff's alleged failure to exhaust administrative remedies.

tions taken by King in May, August and September of 1998. *See Schibrat v. New York State Hous. Fin. Agency,* 1998 WL 118171, *4, 1998 U.S. Dist. LEXIS 2990, *12–*13 (S.D.N.Y. March 13, 1998) ("Essential to a retaliation claim is that the employer knew about the protected activity prior to taking an adverse employment action").

The Plaintiff claims, however, that he let his dissatisfaction with the vacancy process be known around the office and that he noticed a marked change in King's demeanor after he filed his first EEO complaint. Moreover, King's supervisor, Marvin Walker ("Walker"), stated in his deposition that there was an acrimonious relationship between the Plaintiff and King, although Walker did not know exactly when the acrimony first developed. (Pl. Exh. C at 18–19). In addition, the Plaintiff points to a number of situations, corroborated by testimonial evidence, that might lead a jury to doubt King's credibility.[3] Thus, there appears to be a factual dispute related to a material fact and summary judgment is inappropriate.

The Plaintiff's second set of retaliation claims, from May to December 1999, also contain disputed issues of material fact, namely, whether King's actions were done in retaliation for the Plaintiff's EEO complaints or because the Plaintiff was an unsatisfactory employee. There is conflicting testimony on this issue, not only between the Plaintiff and King but also between King and Robert Weaver ("Weaver"), the Plaintiff's supervisor on the Electronic Crime Task Force.[4]

## CONCLUSION

Therefore, the Defendant's motion for summary judgment is GRANTED, in part, with respect to the Plaintiff's ADEA claim and DENIED, in part, with respect to the Plaintiff's Title VII claim.

SO ORDERED.

**3.** For example, King testified that in the summer of 1998, he informed the Plaintiff's supervisor, John F. Saladino ("Saladino"), that he would have to give the Plaintiff an unsatisfactory performance rating. Saladino, however, was not even assigned to be the Plaintiff's supervisor until May 1999, one year after this alleged discussion took place. (Pl. 56.1 Statement at 92–93).

**4.** For example, King alleges that he removed the Plaintiff from the Electronic Crime Task Force because Weaver told him that the Plaintiff was "not working out." (Pl. 56.1 Statement at 6). Weaver, however, does not recall this conversation and stated that the Plaintiff was doing a "satisfactory job." (Pl. Local Rule 56.1 Statement at 89–90).