**Sylvester CLARKE, Plaintiff,**

v.

**ONE SOURCE FACILITY SERVICES, INC. Defendant.**

**No. 99 Civ. 2323(LMM).**

United States District Court, S.D. New York.

April 19, 2001.

Anthony Chukwuka Ofodile, Anthony Ofodile, Brooklyn, NY, for Plaintiff.

Felice B. Ekelman, Steven D. Hurd, Jacksom, Lewis, Schnitzler & Krupman, New York City, for Defendant.

## MEMORANDUM AND ORDER

MCKENNA, District Judge.

Sylvester Clarke ("Plaintiff" or "Clarke"), an African–American male, brings this action pursuant to Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e, *et seq.* (1994) ("Title VII"), against One Source Facility Services, Inc. (also known as ISS–International Service Systems, Inc. ("Defendant" or "ISS")) for employment discrimination and retaliatory discharge based on race and color. Defendant moves for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons stated below Defendant's motion is granted in part and denied in part.

**Statement of Facts**

Clarke began working for Total Building Maintenance ("TBM") in 1995 as a tempo-

rary porter providing cleaning and maintenance services in commercial buildings. (Pl.'s Rule 56.1 Statement ¶ 1) (hereinafter "Pl.'s R. 56.1.") In 1996, TBM was acquired by ISS and Plaintiff was kept on as a "per diem floater" filling in for full time employees on an as needed basis. *Id.* Since Plaintiff began working for TBM, and at all relevant times, Plaintiff was a member of a union and his employment was governed by a collective bargaining agreement. (*Id.* ¶ 4.) In 1998–1999 ISS acquired several other corporations and changed its name to One Source Facility Services, Inc.

## A. Plaintiff's Tenure as a Per Diem Employee

When ISS acquired TBM in 1996, Plaintiff had been working as a porter at 60 Hudson Street ("60 Hudson") continuously for eight months. (Pl.'s R. 56.1 ¶ 2.) After the acquisition, Plaintiff stayed on in his position at 60 Hudson. (*Id.*) Plaintiff alleges that shortly after ISS took over TBM he was approached by a Caucasian ISS manager who offered Plaintiff non-union work at below union pay with no benefits. (*Id.* ¶ 3.) Plaintiff refused this offer. (*Id.*) Plaintiff alleges that two days after his refusal he was removed from his position at 60 Hudson and replaced by a Caucasian porter with less seniority. (*Id.* ¶ 4.) Plaintiff states that he went to the union to complain about this incident of discrimination and as a result he was reinstated. (*Id.* ¶ 5.)

A week after being reinstated Plaintiff was again removed from his position at 60 Hudson, replaced by Leroy Rhames, an African–American employee with twenty five years seniority and placed on "route work" status.[1] (*Id.* ¶ 5.) Defendant contends that Plaintiff was removed because

Mr. Rhames' position at 110 East 42nd Street had been eliminated and pursuant to the collective bargaining agreement Mr. Rhames could replace Clarke who only had three years seniority. (Def.'s Rule 56.1 Statement ¶¶ 7–9) (hereinafter "Def.'s R. 56.1.") Plaintiff asserts that at the time he was replaced there were Caucasian workers in the building with less seniority than he had, and that they should have been removed before him. (Pl.'s R. 56.1 ¶ 8.) During discovery Plaintiff sought to obtain the seniority list from Defendant, but Defendant indicated that the list had been destroyed. (*Id.* ¶ 11; Surace Dep. at 58–63.) Up to this point in his employment with TBM and ISS Plaintiff had never had any problems or complaints relating to his job performance. (Pl.'s R. 56.1 ¶ 13.)

## B. Plaintiff's 1996 Administrative Complaint

On Sept. 20, 1996 Plaintiff filed a complaint with the New York State Division of Human Rights ("SDHR") alleging that the loss of his position at 60 Hudson was due to racial discrimination. (Hurd Aff. Ex. F.) Plaintiff contends that after he filed this charge Defendant assigned him less route work and eventually assigned him no work at all. (Pl.'s R. 56.1 ¶ 14.) On November 27, 1996 Plaintiff filed an amendment to his original complaint claiming that he had been retaliated against for filing the complaint. (*Id.*) This alleged retaliation consisted of Defendant not assigning Plaintiff any temporary route work. (*Id.*) Plaintiff alleges that after he filed the discrimination charge, Steve Romano, one of his supervisors, told him that if Plaintiff continued pursuing his charges he would not be given any more work. (*Id.* ¶ 15.)

---

1. "Route work" status means that ISS would call Plaintiff day-to-day if they had work for that day. Plaintiff could either accept the daily work or turn it down.

On October 29, 1998 the SDHR issued a determination and order as to Plaintiff's 1996 complaint. (*Id.* Ex. V.) The order stated that there was "no probable cause to believe that ISS engaged in or is engaging in the unlawful discriminatory practice complained of." (*Id.*)

## C. Plaintiff's Tenure as a Full Time Employee

In an attempt to resolve Plaintiff's claims of discrimination, and to avoid arbitration, ISS agreed to give Plaintiff a "permanent position." (Hurd Aff. Ex. H.) In February 1998, Plaintiff was placed full time at 224 West 57th Street replacing a porter who was on a leave of absence. (Surace Dep. at 37–38.) At this location, Plaintiff was written up by his supervisor for not following orders to remove the papers and the computers off the desks when cleaning. (Pl.'s R. 56.1 ¶ 28.) However, as he explained to the supervisor, Plaintiff had received specific instructions from the clients that they did not want their papers and computers moved off the desk when the cleaning was done. (Clarke Aff. Ex. 3.) Plaintiff brought the incident to the attention of the union. (Pl.'s R. 56.1 ¶ 28.)

In April 1998 when the porter at 224 West 57th Street returned, Plaintiff was moved to 630 Third Avenue. (Def.'s R. 56.1 ¶ 18.) Defendant alleges that after three months the owner of the building complained about Clarke's work and asked that he be removed. (Def.'s R. 56.1 ¶ 19; Surace Dep. at 39–40, 42–4, 143.) However, there is no documentation to support these alleged complaints. Defendant maintains that as a result of the building owner's dissatisfaction, Clarke was transferred to 122 East 42nd Street. (Def. R.

56.1 ¶ 20.) After a month at this new location Clarke informed his supervisor that he was taking his vacation the next week. (*Id.* ¶¶ 21–23.) When Plaintiff returned from vacation his supervisor, Rex Qosja, had already replaced him with another porter. (*Id.*) Clarke was sent by Mr. Qosja to the ISS office to receive another assignment. (*Id.* ¶ 24.)

On July 15, 1998 Plaintiff began his new assignment at 1411 Broadway. (*Id.* ¶ 29.) On his first night of work Plaintiff was written up for failing to complete his work assignment even though he had not been able to start working until at least two and a half hours into his shift.[2] (Hurd Aff. Ex. K; Clarke Dep. at 140–42.) Subsequently, on July, 17, 20 and 21 Plaintiff was also written up for failure to complete his work assignments satisfactorily. (Hurd Aff. Exs. L–N.) On July 22 one of the clients complained in writing concerning Plaintiff's poor work performance (*Id.* Ex. O) and on August 4 another client complained that her work areas were not clean. (*Id.* Ex. P.) Plaintiff alleges that the reason his work assignments were not completed was because he was given too much work to finish during his shift. (Pl.'s R. 56.1 ¶¶ 40–42.) Defendant has provided work reports for the employees who had Plaintiff's position before and after he worked at 1411 Broadway to show that each of them had the same work load as Plaintiff. (Hurd Aff. Exs. X–Z.)

Due to the write ups and client complaints, Plaintiff was suspended without pay on August 4 for three days. (*Id.* Ex. R.) On August 5, Clarke went to 1411 Broadway and spoke with the tenants about his suspension and asked them to write letters on his behalf. (Pl.'s R. 56.1 ¶ 50.) ISS employees are not permitted to

---

**2.** Plaintiff started his work assignment late because his supervisor, who was located at 1400 Broadway, brought Plaintiff to his position two and half hours late and Plaintiff was not shown the routine until half the night had passed. (Pl.'s R. 56.1 ¶ 44.)

contact or solicit tenants or clients of a building. (Surace Dep. at 96, 147–50.) Rebecca Ryan, a client at 1411 Broadway, sent Defendant a letter complaining about Plaintiff approaching her for a recommendation. (Hurd Aff. Ex. T.) Subsequently, Plaintiff was terminated on August 10, 1998 for poor work performance and his interaction with clients. (*Id.* Ex. U.)

### D. Plaintiff's 1998 Administrative Complaint

On July 15, 1998 Plaintiff filed a second complaint against ISS with SDHR for racial discrimination and amended the complaint on August 6 to include an allegation of retaliation in connection with the three day suspension. (*Id.* Ex. S.) Plaintiff's second complaint is still outstanding. (Def.'s R. 56.1 ¶ 28.)

### Legal Standards

### A. Summary Judgment

The moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). When considering the entire record the court must take the evidence in the light most favorable to the non-moving party and draw all positive inferences in that party's favor. *Gorley v. Metro–North Commuter R.R.,* 2000 WL 1876909, at *3, 2000 U.S. Dist. LEXIS 18427, at *9 (S.D.N.Y. Dec. 21, 2000). However, the mere existence of an alleged factual dispute will not defeat a summary judgment motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To survive summary judgment the non-moving party must set forth facts to show that a genuine issue of material fact exists such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248, 106 S.Ct. 2505.

Initially the moving party bears the burden of showing the absence of any disputed issues of material fact. *Fullerton v. Prudential Life Ins. Co.,* 2000 WL 1810099, at *5, 2000 U.S. Dist. LEXIS 17915, at *12 (S.D.N.Y. Nov. 30, 2000). Once the moving party has met this burden the non-moving party must show "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), by relying on more than mere conclusory allegations or unsubstantiated speculation. *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998).

In an employment discrimination case the court must be careful when granting summary judgment because direct evidence establishing that a defendant intentionally discriminated is very rare. *Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994). However, even where an employer's state of mind or intent is at issue, summary judgment is not necessarily precluded. *Taylor,* 1999 WL 124456, at *7, 1999 U.S. Dist. LEXIS 2583, at *19.

### B. Title VII Discrimination Claim

Employment discrimination claims under Title VII are evaluated under the framework of the McDonnell–Douglas burden shifting analysis. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The first step in the analysis places the burden of production on the plaintiff to establish a prima facie case of discrimination by showing that: (1) he is a member of a protected class; (2) he satisfactorily performed the duties of his job; (3) he suffered an adverse employment action;

and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination on the basis of membership in the protected class. *Chambers,* 43 F.3d at 37. Plaintiff's burden at this stage is de minimis. *Id.*

Once the plaintiff establishes a prima facie case, a presumption of discrimination is created and the burden shifts to the defendant to provide a legitimate and specific non-discriminatory reason for the adverse employment action. *Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 129 (2d Cir.1996). If the defendant meets its burden, the presumption of discrimination created by the prima facie case drops out and the burden shifts back to the plaintiff to show that the defendant's non-discriminatory reason is a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). To establish pretext the plaintiff "must show that there is a material issue of fact as to whether (1) the employer's asserted reason for discharge is false or unworthy of belief and (2) more likely than not the [discrimination] was the real reason for the discharge." *Johnson v. New York City Bd. of Ed.,* 2000 WL 1739308, at *8, 2000 U.S. Dist. LEXIS 17410, at *25 (E.D.N.Y. Oct. 10, 2000) (quoting *Woroski v. Nashua Corp.,* 31 F.3d 105, 108–109 (2d Cir.1994)). At this stage of the analysis, in order for a plaintiff to defeat a motion for summary judgment he must provide "evidence sufficient to allow a rational factfinder to infer that the employer was actually motivated in whole or in part by [race] discrimination." *Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 560 (2d Cir.1997).

Throughout the analysis, the burden shifts back and forth between the plaintiff and defendant; however, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

■■ In the present case, Plaintiff has established a prima facie case by showing that, (1) he is an African–American; (2) he was qualified for the position he had held;[3] (3) he was transferred to various unwanted job locations in a short period of time, and was eventually suspended and terminated; and (4) Defendant hired a non-African-American to replace him at 1411 Broadway after his termination.

■ Because Plaintiff has established a prima facie case, Defendant must show that the adverse employment actions were taken because of a legitimate non-discriminatory reason. *Holt,* 95 F.3d at 129. Defendant has met this burden of production by offering evidence that (1) Plaintiff was removed from his position at 60 Hudson for reasons that are legitimate under the collective bargaining agreement; (2) at all times after the agreement to give Plaintiff a "permanent position," Plaintiff did in fact work full time; and (3) Plaintiff's suspension and termination were valid because of his poor work performance supported by evidence of negative performance evaluations by various supervisors and complaints from clients at various job locations who were unsatisfied with Plaintiff's work.

**3.** For a Plaintiff to demonstrate that he was qualified for the job he must show that he was qualified for the position at the time he was discharged, regardless of whether or not he performed the position to his employer's satis-

faction in the past. *Fullerton v. Prudential Life Ins. Co.,* 2000 WL 1810099, at *6, 2000 U.S. Dist. LEXIS 17915, at *15 (S.D.N.Y. Nov. 30, 2000).

Because Defendant has provided legitimate non-discriminatory reasons for the adverse employment actions, Plaintiff must establish that the reasons Defendant offers are simply a pretext for racial discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Merely proving a prima facie case and disproving the employer's explanation for its conduct at the third step of the analysis will not establish pretext and preclude summary judgment. *Cobian v. New York Administration for Children's Services*, 2000 WL 1782744, at *13, 2000 U.S. Dist. LEXIS 17479, at *46 (S.D.N.Y. Dec. 6, 2000).

 In an attempt to establish pretext, Clarke has failed to provide any evidence that Defendant's actions toward him were racially motivated. With regard to his discriminatory discipline and discharge claims, Clarke provides nothing more than mere speculation and unsupported allegations of racial discrimination which are insufficient to defeat a motion for summary judgment. *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). Even if Plaintiff was subjected to extra scrutiny or even if there was a "crusade" against him, he must show that Defendant's actions were motivated specifically by racial discrimination. *See Johnson*, 2000 WL 1739308, at *8, 2000 U.S. Dist. LEXIS 17410, at *26. Plaintiff has not provided any evidence of racial animosity directed at him in the form of remarks, gestures or actions which would indicate that Plaintiff was treated differently because he was African–American.

Because Plaintiff has not provided any evidence that Defendant's actions were motivated by racial discrimination, and Defendant has provided a legitimate non-discriminatory reason for the adverse employment actions, Plaintiff's discrimination case fails at step three of the analysis for failure to show that there is an issue of fact as to pretext. Accordingly, Defendant's motion for summary judgment with respect to Plaintiff's Title VII claim for discrimination is granted.

## C. Title VII Retaliation Claim

The same McDonnell–Douglas burden shifting analysis used in a Title VII discrimination claim is also followed in a Title VII retaliation claim. *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 208 (2d Cir. 1990). First, the plaintiff must establish a prima facie case showing that (1) he participated in an activity protected by Title VII which his employer was aware of; (2) he suffered an adverse employment action; and (3) there exists a causal connection between the participation in the protected activity and the adverse employment action. *Holt*, 95 F.3d at 129.

 If a plaintiff establishes a prima facie case, the burden shifts first to the defendant to articulate a legitimate non-retaliatory reason for the adverse employment action and then back to the plaintiff to show pretext. *Id.* Because the burden of persuasion at all times rests on the plaintiff, to establish pretext the plaintiff must show both that the defendant's reason was false and that the defendant intentionally retaliated against him because he engaged in a protected activity. *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033 (2d Cir.1993). However, the retaliatory motive does not have to be the sole motive for the adverse employment action, it just must be one of the reasons. *Id.* at 1039. Therefore, "Title VII is violated when an employer is motivated by retaliatory animus, even if valid objective reasons for the discharge exist." *Id.*

■ In the present case Clarke has established a prima facie case for retaliation under Title VII by showing that, (1) he was engaged in protected activity when he filed discrimination complaints both with his union and SDHR;[4] (2) he suffered various adverse employment actions including losing his position at 60 Hudson, being given less route work, being subjected to various unwanted job transfers in a short period of time, suspension and ultimately termination; and (3) there is a causal connection, because the adverse employment actions began very shortly after Plaintiff filed his first complaint.[5] Once again the burden on Plaintiff at this stage is de minimus.

■ At the second step of the analysis Defendant has offered legitimate non-retaliatory reasons for each adverse employment action suffered by Plaintiff which included a seniority demotion, negative work evaluations, performance warnings and client complaints. Because these are satisfactory non-retaliatory reasons for Defendant's actions the burden shifts to Plaintiff to prove these reasons are a pretext for retaliation. Plaintiff's evidence showing pretext can be laid out as follows.

■ Up until the time Plaintiff was removed from his position at 60 Hudson, he had never received any complaints about his work performance while employed at TBM or ISS until after he had filed claims of discrimination. The first adverse employment action Plaintiff suffered while employed by ISS was his removal from 60 Hudson. The events leading up to Plaintiff losing this position begins with Plaintiff's allegation that while working at 60 Hudson he was approached by a Caucasian manager who offered him non-union work at below union pay with no benefits which Plaintiff refused. Plaintiff alleges that two days after this refusal he was removed from his position at 60 Hudson and replaced by a Caucasian porter with less seniority. Plaintiff states that he went to the Union to complain about this incident of discrimination and as a result he was reinstated. However, a week later Plaintiff was removed from his position and replaced by an African–American porter with twenty five years experience.

Defendant denies that Clarke was replaced by a Caucasian porter and claims that the only reason Plaintiff was removed from his position was because Mr. Rhames had twenty five years seniority and Clarke

---

**4.** The Second Circuit has held that "[i]n addition to protecting the filing of formal charges of discrimination, § 704(a)'s opposition clause protects as well informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of coworkers who have filed formal charges." *Sumner*, 899 F.2d at 209.

**5.** A plaintiff may establish a causal connection either indirectly by showing that the protected activity was followed closely by discriminatory treatment, or directly through evidence of retaliatory animus. *See Johnson v. Palma*, 931 F.2d 203 (2d Cir.1991). Although Plaintiff was not actually terminated

until long after he filed his first employment discrimination claim, the pattern of adverse employment actions Plaintiff suffered are similar to a case in the Tenth Circuit where the court held that the Plaintiff made a sufficient prima facie showing of causation to avoid summary judgment when he showed that shortly after filing a complaint, a pattern of retaliatory conduct began even though he was not finally terminated until much later. *Marx v. Schnuck Markets*, 76 F.3d 324, 329 (10th Cir.), *cert. denied*, 518 U.S. 1019, 116 S.Ct. 2552, 135 L.Ed.2d 1071 (1996). In this case, Clarke has shown a pattern of possible retaliatory conduct beginning with being removed from his position at 60 Hudson a week after filing a charge of discrimination with the union.

only had three. Plaintiff alleges that this seniority demotion was not legitimate because he was not the least senior person in the building, and pursuant to the collective bargaining agreement an employee with greater seniority whose position is extinguished can replace the employee with the least seniority. (Hurd Aff. Ex. E at 56–57.) Contrary to Plaintiff's claim, Defendant states that Plaintiff was in fact the least senior person in the building. However, Defendant has failed to provide the relevant requested seniority list used in making their determination to replace Clarke or any other documentary evidence to support its position. Further, this replacement occurred a week after Plaintiff filed a complaint with the union that he had been discriminated against. Subsequently, Plaintiff filed a formal complaint with the SDHR.

After losing his position at 60 Hudson, Plaintiff alleges that he received less route work than he had been given prior to his complaints being filed. Defendant claims that Plaintiff received less work simply because they were unable to reach him. However, Plaintiff never received any messages from the Defendant regarding potential work. Additionally, Plaintiff claims that he was told by his supervisor Steve Romano that he would not be given any more work if he took his charges of discrimination any further.[6] Subsequently, Plaintiff was assigned less and less route work.

After Plaintiff had filed charges with the SDHR, Defendant agreed to give Plaintiff a "permanent position" instead of going to arbitration. Subsequently, Plaintiff was placed in a full time position. However, in the ensuing six month period Plaintiff was transferred to four different job locations and began receiving negative work evaluations at every job location in which he was placed. These various negative work evaluations ultimately led to Clarke's termination. As previously stated, prior to this time Plaintiff had never received one complaint for poor job performance in the three years he had been employed as a porter.

Defendant argues that none of Plaintiff's supervisors were aware that Plaintiff had filed discrimination complaints. However, it is clear from Fred Surace's fax to the payroll department that such information was not keep confidential. (Ofodile Aff. Ex. 19.) In a request for Plaintiff's paycheck addressed to Terry Rovetto with a carbon copy sent to Ken Martin, Mr. Surace noted that Clarke had filed charges of discrimination. (*Id.*) It can be inferred from this note that Defendant did not keep such information confidential and that it was shared among its employees. Whether such information was conveyed to Plaintiff's individual supervisors however, is unclear.

When considering all the evidence above, there exist genuine issues of material facts which could allow a rational jury to conclude that retaliation may have been

---

**6.** Defendant argues that Clarke's affidavit statements about comments made by Steve Romano are contrary to statements made during his deposition testimony, and that an affidavit which contradicts a prior deposition testimony should be disregarded. (Def. Reply Mem. at 1–3.) First, the Court finds that Plaintiff's affidavit expands rather than conflicts with his prior deposition. However, even if it was conflicting, "[m]erely because

the plaintiff's affidavit conflicts with his deposition testimony does not nullify the value of the affidavit. 'The court may not exclude the affidavit from consideration in the determination of the question whether there is any genuine issue as to any material fact.'" *Moorer v. Grumman,* 964 F.Supp. 665, 670 (E.D.N.Y.1997) (quoting *Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969) (citation omitted)).

a factor in the numerous adverse employment actions Plaintiff suffered while employed at ISS. Therefore, Defendant's motion for summary judgment with respect to Plaintiff's claim for retaliation under Title VII is denied.

## Conclusion

For the reasons stated above, Defendant's motion for summary judgment is granted with respect to Plaintiff's Title VII discrimination claim and denied with respect to Plaintiff's Title VII retaliation claim.[7]

SO ORDERED.

---

7. Plaintiff cross moves for an order precluding Defendant from relying on conclusory statements of their officers when Defendant did not produce relevant documents during discovery or, in the alternative Defendant should be ordered to produce relevant documents prior to the Courts decision on summary judgment. Plaintiff's motion is denied.

Defendant's alleged failure to produce relevant documents, as discussed above, has not prejudiced Plaintiff's case. In any event, because Plaintiff's motion comes after the close of discovery Plaintiff's motion is untimely. Plaintiff's request for expenses incurred in connection with this motion is denied.