**Esther GANTHIER, Plaintiff,**

v.

**NORTH SHORE–LONG ISLAND JEW-ISH HEALTH SYSTEM, INC., and Susan Tobin, Defendants.**

**No. CV 03–142(ADS).**

United States District Court,
E.D. New York.

Nov. 19, 2004.

K.C. Okoli, Esq., New York, NY, for Plaintiff.

Epstein Becker & Green, Esqs., New York, NY, by David O. Simon, Esq., Barbara Gross, Esq. of Counsel and Jordy Rabinowitz, Esq., Associate General Counsel, North Shore–Long Island Jewish Health System, Great Neck, NY, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff Esther Ganthier ("Ganthier" or the "Plaintiff") brought this action against the defendants North Shore–Long Island Jewish Health System, Inc. ("North Shore Hospital" or the "Hospital") and Susan Tobin alleging three federal and two state causes of action. These causes of action are (1) Title VII—racial discrimination, (2) Title VII—national origin discrimination, and (3) Section 1981 racial discrimination. In addition, she alleges similar tracking causes of action under the New York State Human Rights Law for racial and gender discrimination.

In this jury trial, this decision was made after both sides rested. The written decision is being made to confirm the oral decision made by the Court after both sides rested on November 4, 2004. At that time the defendants moved for judgment as a matter of law pursuant to Federal Rules of Civil Practice ("Fed.R.Civ.P.") 50(a), to dismiss all the causes of action in the complaint.

## I. BACKGROUND

The plaintiff Esther Ganthier testified that she was born in Haiti; and immigrated to the United States in 1981. Prior to 2001, she worked at a myriad of jobs, some of which were in the medical field. The Plaintiff became associated with the Greystone Staffing Company, an employment agency. On September 4, 2001, she reported to the defendant North Shore Hospital for an assignment as a medical biller. At this position the Plaintiff did "Medicare cash posting," initially for the Franklin General Hospital, a division of the North Shore Hospital, and then, in addition, for North Shore Hospital itself and Southside Hospital, also an affiliate.

There is no doubt, and it is conceded, that at all times the Plaintiff was an employee of Greystone Staffing and not the North Shore Hospital. Her wages were paid by North Shore Hospital to Greystone who then paid the Plaintiff. However, she was under the supervision and control of the Hospital, and, therefore, the Hospital was subject to the employment discrimination laws.

The testimony revealed that the Plaintiff's work at North Shore Hospital was more than satisfactory. She was a good worker and a pleasant person. No complaints were made as to the quality of her performance.

The Plaintiff's chief contention is that she was not hired to fill a permanent medical biller position, which opened up at the North Shore Hospital when Robert Brooks, a white employee, left that position. Instead, apparently seeking to retain her services, the North Shore Hospital offered her the position of data entry clerk, which was a lower paid position. The Plaintiff alleges that one Louise Pico, a white woman, was given the position as medical biller. Actually, the uncontroverted proof shows that the medical biller position at issue was given to Saundra Morgan, then a twelve-year black employee of the North Shore Hospital.

The Plaintiff was advised of this job selection on Tuesday, October 20, 2001, and, on that day, she left work at North Shore Hospital and never returned. She testified that she did not return to work because she did not want to work as a data entry clerk. The Plaintiff readily admitted the she voluntarily left her temporary job at the North Shore Hospital. In the vernacular, she "quit."

## II. DISCUSSION

### A. RULE 50 JUDGMENT AS A MATTER OF LAW

Rule 50 of the Fed.R.Civ.P. provides, in pertinent part, as follows:

**Rule 50. Judgment as a Matter of Law in Jury Trials**

**(a) Judgment as a Matter of Law.**

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for a judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

██ "[T]he same standard that applies to a pretrial motion for summary judgment pursuant to Fed.R.Civ.P. 56 also applies to motions for judgment as a mat-

ter of law during or after trial pursuant to Rule 50." *Piesco v. Koch,* 12 F.3d 332, 341 (2d Cir.1993); *see also* Advisory Committee Note to 1991 Amendment of Fed. R.Civ.P. 50 (recent adoption of term "judgment as a matter of law" to replace both the term "directed verdict" and the term "judgment n.o.v." was intended to call attention to the close relationship between Rules 50 and 56). A district court may not grant a motion for a judgment as a matter of law unless "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." *Cruz v. Local Union No. 3, Int'l Bhd. Of Elec. Workers,* 34 F.3d 1148, 1154–55 (2d Cir. 1994) (quoting *Simblest v. Maynard,* 427 F.2d 1, 4 (2d Cir.1970)) (internal quotation omitted). Weakness of the evidence does not justify judgment as a matter of law. As in the case of a grant of summary judgment, the evidence must be such that "a reasonable juror would have been compelled to accept the view of the moving party." *Piesco,* 12 F.3d at 343. *See This Is Me Inc. v. Elizabeth Taylor, et al.,* 157 F.3d 139 (2d Cir.1998).

## B. THE TITLE VII—RACIAL DISCRIMINATION CAUSE OF ACTION

### 1. *The Standards*

■ In assessing whether judgment as a matter of law is proper, the court must view all evidence and draw all inferences in the light most favorable to the non-moving party. *See EEOC v. Ethan Allen, Inc.,* 44 F.3d 116, 119 (2d Cir.1994). The Court should grant a judgment as a matter of law only if no reasonable fact finder could return a verdict against the movant. *See id.* In this case, therefore, the Court must examine whether the evidence at the trial

provided any basis on which a juror reasonably could have found that Esther Ganthier was a victim of race or national origin discrimination.

■■ The procedure for demonstrating both and race and national origin discrimination follows the familiar *McDonnell Douglas* order of proof for claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1994 & Supp.1999). First, the Plaintiff must establish a *prima facie* case of discrimination by establishing the following elements: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination. *See de la Cruz v. New York City Human Resources Admin.,* 82 F.3d 16, 20 (2d Cir.1996) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Generally, a Plaintiff's burden of establishing a *prima facie* case in the context of employment discrimination law is "minimal." *McGuinness v. Lincoln Hall,* 263 F.3d 49, 53 (2d Cir.2001).

■ Once the Plaintiff has established a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action. *See id.* If the employer meets its burden, the Plaintiff then must prove that the articulated justification is in fact a pretext for discrimination or that there is another discriminatory reason. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Here, there is no doubt that the Plaintiff satisfied the first two elements of a *prima facie* case of employment discrimination in that she is a member of a protected class and was qualified for the position of "medical biller." With respect to the third ele-

ment, there is some doubt that the Plaintiff suffered an adverse employment action because she never applied for the position of medical biller and she was not terminated, but rather voluntarily quit her job at North Shore. Nevertheless, assuming that North Shore's failure to hire Ganthier for the permanent medical bill position and/or demoting her to the data entry clerk position constitutes an adverse employment action, in the Court's view, the Plaintiff failed to satisfy the fourth element of a *prima facie* employment discrimination case. In the Court's view, the Plaintiff did not meet the minimal threshold of establishing that the failure to hire her for the permanent medical bill position and/or demoting her to data entry clerk, occurred under circumstances giving rise to an inference of discrimination.

### 2. Did the Defendant's Actions Occur Under Circumstances Giving Rise to an Inference of Discrimination

The Plaintiff's race and national origin discrimination claims rest on her contention that the North Shore Hospital failed to hire her as a permanent medical biller because of her race or national origin. There is no dispute that the Plaintiff is a black woman and that she was qualified for the position of medical biller. However there is a dispute as to whether she suffered an adverse employment action. Assuming, for the purpose of this discussion, that she did satisfy the third element, the Plaintiff's claims must ultimately fail on the fourth prong; she did not produce any evidence sufficient to support a reasonable inference that the failure to promote her to a medical biller was the result of race discrimination.

A Plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably. *See Shumway v. United Parcel*

*Serv., Inc.*, 118 F.3d 60, 63 (2d Cir.1997). Here, the "similarly situated" employee who received the promotion was Saundra Morgan, a black woman. This position was previously held by Robert Brooks, a white man. Further, Morgan was a long time permanent employee of the North Shore Hospital. She was first employed in April 1989 and worked for approximately twelve years in the hospital prior to being promoted to medical biller in November 2001. This difference in work experience at North Shore Hospital is highlighted by the facts that the Plaintiff was a temporary employee on the payroll of Greystone Staffing Agency, and worked only approximately six weeks for the hospital. It is interesting to note that because of her long tenure with the hospital, Morgan's promotion resulted in a wage increase of fifty cents per hour.

While Morgan's performance reviews were average at best and it was revealed that she had a tardiness problem, nevertheless, the April 28, 2001 evaluation while commenting on her tardiness stated, in part:

Saundra has a good eye for detail. She has incorporated the centralization of date entry very well and has become the expert on split billing. She has also learned cash entry to assist in cash posting ... Saundra is a pleasure to work with.

If this case went to the jury, the following would be included in the Court's charge.

Federal law makes it unlawful for an employer to discriminate against an employee because of that person's race.

The Plaintiff maintains that North Shore Hospital failed to hire her as a medical biller because of her race or national origin; accordingly, it is her burden to prove, by a preponderance of

the evidence, that this decision was motivated by her race.

I instruct you that employers such as the defendant North Shore Hospital are free to decide to hire or promote employees for any reason other than unlawful discrimination. The defendant's conduct can be found to be unlawful discrimination only if it was motived by the Plaintiff's race or national origin.

In considering whether the Plaintiff has met her burden of establishing that she was denied this position because of her race or national origin, you should keep in mind that the defendant North Shore Hospital was entitled to make any business judgment it chose—however wise or unwise, fair or unfair, or however misguided it may appear to you—so long as it was not basing its judgment on the Plaintiff's race or national origin.

As I stated, you should be mindful that the law applicable to this case requires only that an employer not discriminate against an employee because of her race or national origin. I further instruct you that, in order for the Plaintiff to prevail, she must prove, by a preponderance of the evidence, that she was denied this position because of intentional racial or national origin discrimination.

The Plaintiff's contention that Louise Pico, a white woman, was favored over her on the basis of race, is totally without merit. Pico was hired as a temporary data entry clerk only after the Plaintiff declined to accept that position. Pico did not compete with the Plaintiff for the position at issue.

The Plaintiff also contends that Saundra Morgan was not promoted to medical biller until after the Plaintiff filed a discrimination claim with the New York State Department of Human Rights. The Plaintiff also asserts that Louise Pico was originally hired for that position and Saundra Morgan was an afterthought. However, there is clear evidence to the contrary. Esther Ganthier admitted that she knew Saundra Morgan was getting this position prior to her leaving her job at North Shore Hospital on October 20, 2001.

Q. Did you learn that she was getting a new title as biller?

A. Yes.

Q. Do you recall that you were told that the reason your temporary biller position was ending was because Saundra Morgan was being given the permanent biller position?

A. Yes.

Q. So, you knew she was being given the biller position?

A. Yes.

* * *

Q. Now, at the same time did you learn that Saundra Morgan was being promoted to a biller, weren't you also told that Saundra Morgan was going to be moving over to Chauncy Morris' unit?

A. Yes.

* * *

Q. On October 30, you were informed that Saundra Morgan would be going from data entry to billing?

A. Yes.

Tr.* at 124, 126 and 149.

This knowledge on the part of the Plaintiff was obtained before she filed a discrimination complaint with New York State in December 2001. So that the Plaintiff herself, by her unequivocal testi-

* Tr.—refers to the trial transcript.

mony, established that the Saundra Morgan promotion to medical biller was no afterthought.

Not only was there no discriminatory conduct against the Plaintiff, but, apparently the North Shore Hospital would have welcomed her to join them in the open data entry clerk position. The defendant Susan Tobin, the Plaintiff's supervisor, testified as follows:

Q. When Ms. Morgan ceased to be a data entry clerk, did you then have an opening for a data entry clerk position?

A. Yes.

Q. Were you then authorized to hire a temp for that position?

A. Yes.

Q. Now, you spoke with a temp agency, Greystone?

A. Yes, I did.

Q. And what did you tell them about North Shore's views about whether Ms. Ganthier could come back in that new position?

A. I spoke with them and said we were pleased with the work Ms. Ganthier is doing, if she could come and fill the slot as a data entry person, we would welcome to let her take the position since she was familiar with the company and the computer, that we would—you know, that if they could work it out, we would accept her in the data entry position.

Q. So, you made it clear as far as North Shore was concerned, she was welcome to come back in that position as well?

A. Yes.

Tr. at 204–205.

Also, supervisor Pamela Donovan testified as follows:

Q. What do you recall telling the temp agency about that?

A. We no longer needed a medical biller but we now needed a data entry position.

Q. Did you make any reference to that as to whether North Shore was willing to have the plaintiff fill that new position?

A. Yes.

Q. What did you tell them?

A. We were satisfied with her work and she could continue on as a data entry position.

Tr. at 338.

Significantly, the undisputed statistics in the North Shore Hospital Billing Department just prior to the Plaintiff's commencement of her temporary employment with North Shore Hospital as a biller, shows that there were eleven medical billers in the department, eight were black and three were white. When Robert Brook left he was replaced by Saundra Morgan. At that point there were nine black and two white billers. Also it is interesting to note that after Louise Pico left as temporary data entry clerk in December 2001, North Shore Hospital hired two black data entry clerks, Martin Charles and Nina Meseyer.

Further, the proof is clear that the Plaintiff "voluntarily quit" working for North Shore Hospital when she was offered the opportunity to continue to work for North Shore Hospital as a data entry clerk. The Plaintiff testified that she rejected that offer and voluntarily left as a temporary employee of North Shore Hospital.

Q. Now, at the same time did you learn that Saundra Morgan was being promoted to biller, weren't you also told that Saundra Morgan was now

going to be moving over to Chauncy Morrris' unit?

A. Yes.

Q. And weren't you told that that is the reason that there now was an opening for data entry clerk, because she was promoted from data entry clerk to biller?

A. I don't know.

Q. Now, you were offered the data entry clerk position; is that right?

A. Yes.

Q. And you didn't want that position, did you?

A. No.

Q. And you objected to being offered that position, didn't you?

A. Yes.

Q. And when you objected to being offered that position, you complained to your person at Greystone Staffing; is that correct?

A. Yes.

Q. And because that was your employer, correct?

A. Yes.

Q. Did you complain to Pam Donovan about being offered the data entry clerk position?

A. No.

Q. Did you complain to anyone at human resources at North Shore about being offered the data entry clerk position?

A. No.

Q. You knew that your employer—that the place that placed you was your employer, Greystone; is that correct?

A. Yes.

* * *

Q. And you knew that the biller position, the temp position you had was going to run through Friday; is that correct?

A. Yes.

Q. But you left on Tuesday; is that correct?

A. Yes.

* * *

Q. So you quit that job, didn't you?

A. Yes, I did.

* * *

Q. But you didn't complete the job assignment, did you? You left early?

A. She asked me if I am to finish—

Q. I am just asking you if you finished the assignment. You didn't finish the assignment, did you?

A. No.

Q. And under commitment, do you see where it says, if I do not complete the assignment, Greystone can assume that I had voluntarily resigned, correct?

A. Yes.

Q. And that is what you did, correct?

A. Yes.

Q. The last day you worked was October 30th; is that correct:

A. Yes.

(Tr at 126–128, 130, 132).

In sum there was no evidence of racial discrimination in the Home Care Section of the North Shore Hospital. On the contrary, the supervisor of the department appeared to be totally tolerant and there was no evidence that race had played a part in any employment determination by this section of the North Shore Hospital.

Another problem the Plaintiff has in her claim of a discriminatory failure to promote in this case is the conceded fact that the Plaintiff never applied for the position of medical biller. The record is clear in this regard.

Q. Now, I believe you testified about some postings for a position that Saundra Morris was given the biller position?

MR. OKOLI: Objection. I think it is a mischaracterization of the witness' testimony.

THE COURT: Overruled.

Q. Do you remember testifying about the posting, I believe it was Plaintiff's Exhibit 1, for a biller position?

A. Yes.

Q. Did you ever discuss that with Saundra Morris—sorry, Saundra Morgan?

A. No.

Q. Did you ever apply for that position?

A. No.

Q. Did you ever apply for a biller position that was open at North Shore?

A. No.

(Tr. at 122–123).

The Court finds that the Plaintiff did not establish a *prima facie* case of racial discrimination because she failed to present any evidence from which the requested inference of discrimination could be drawn. *See Brennan v. Metropolitan Opera Assoc., Inc.,* 192 F.3d 310 (2d Cir.1999); *Shumway v. United Parcel, Inc.,* 118 F.3d 60 (2d Cir.1997). As stated in *Shumway,* the Plaintiff's "allegations, generously construed, are little more than conclusory statements of no probative value". See, e.g., *Collins v. New York City Transit Authority,* 305 F.3d 113, 118 (2d Cir.2002); *Gant v. Wallingford Board of Education,*

195 F.3d 134, 149, 150 (2d Cir.1999); *Lichtenstein v. Triarc Companies, Inc.,* 2004 WL 1087263 (S.D.N.Y.2004); *Barriera v. Bankers Trust,* 2003 WL 22387099 (S.D.N.Y.2003); *Cook v. CBS, Inc.,* 2001 WL 897181 (S.D.N.Y.2001); *Wolde–Meskel v. Argus Community, Inc.,* 2001 WL 883648 (S.D.N.Y.2001).

There was no evidence presented that would permit a rational fact finder to infer that the failure to hire Plaintiff Esther Ganthier as a Medical Biller was motivated, in whole or in part, by discrimination on the basis of race or national origin. As stated in the Second Circuit in *Grady v. Affiliated Central Inc.,* 130 F.3d 553 (2d Cir.1997) an age discrimination case:

The record in the present case is bereft of evidence from which a fact finder could infer that Affiliated discriminated against Grady on the basis of her age. For example, Montano stated that she had not heard or observed anything to indicate in any way that Grady or anyone else at Affiliated was treated differently because of age or that Grady was fired because of here age. Grady herself was unable to point to any statement of anyone at Affiliated that she believed related to her age. She was also unable to point to any person at Affiliated whom she viewed as having an animus against older workers.

\* \* \*

The record is perhaps most remarkable for the presence of affirmative evidence—presented by Grady herself—that older and younger trainees were in fact treated the same.

These comments are equally applicable to the facts in this case.

The Plaintiff failed to submit evidence that she was treated any different than employees of a different race, color and/or

national origin. Nor has the Plaintiff presented evidence of *any* discrimination or hostility directed towards *any* protected class. *See Knighton v. Delphi Automotive Systems,* No. 03 Civ. 6270T, 2004 WL 2415084, at *3 (W.D.N.Y. October 28, 2004) (granting defendant employer's motion for summary judgment because the Plaintiff failed to submit evidence that his termination of his employment or failure to be rehired occurred under circumstances giving rise to an inference of discrimination). Moreover, the Plaintiff has not adduced any evidence that any remarks, gestures or actions were made in a discriminatory fashion. *See Clarke v. One Source Facility Servs., Inc.,* 168 F.Supp.2d 91, 98 (S.D.N.Y.2001).

### 3. *North Shore Hospital Established a Non–Discriminatory Reason for Promoting Saundra Morgan*

██ Finally, even if the Plaintiff could have shown a *prima facie* case of racial discrimination, North Shore Hospital has offered a legitimate, non-discriminatory reason for promoting Saundra Morgan and failing to hire the Plaintiff as the Medical Biller, even if the Hospital knew she was applying for the position. As stated above, Morgan was a twelve year veteran at North Shore Hospital; was doing better on her evaluations and, according to her supervisor "has a good eye for detail," "has become the expert on split billing," "learned cash entry to assist in cash posting" and "is a pleasure to work with." This valid non-discriminatory reason stands without any evidence of pretext, nor is there any other discriminatory reason for this promotion. See, e.g., *Wood v. The Sophie Davis School,* 2003 WL 22966288 (S.D.N.Y.2003); *Myrick v. New York City Employees Retirement System,* 2002 WL 868469 (S.D.N.Y.2002).

### C. *THE TITLE VII—NATIONAL ORIGIN CAUSE OF ACTION*

██ There was not a scintilla of evidence produced by the Plaintiff that the failure to hire and/or promote her to medical biller was because of her national origin, as a person born in Haiti. There is no evidence in this case that anyone at the North Shore Hospital even knew of the national origin of the Plaintiff. In addition, the same absence of any circumstances leading to an inference of racial discrimination applies equally to this cause of action. The same valid non-discriminatory reason also applies. This cause of action must be dismissed.

### D. *AS TO INDIVIDUAL LIABILITY UNDER TITLE VII*

██ It is well-settled that "individuals are not subject to liability under Title VII." *Wrighten v. Glowski,* 232 F.3d 119, 120 (2d Cir.2000); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995); *see also Copeland v. Rosen,* 38 F.Supp.2d 298, 302 (S.D.N.Y.1999) ("Individual employees may not be held personally liable under Title VII, even if they are supervisory personnel with the power to hire and fire other employees"). Accordingly, the Title VII claims against defendant Susan Tobin are dismissed.

### E. *AS TO THE SECTION 1981 CAUSE OF ACTION*

██ Section 1981 prohibits intentional race-based discrimination in the workplace. *See Anderson v. Conboy,* 156 F.3d 167, 170 (2d Cir.1998); Under Section 1981, "race" includes ancestry and ethnicity. *See St. Francis College v. Al–Khazraji,* 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987). However, Section 1981 does not prohibit discrimination based on national origin. *Id.* Therefore,

the Plaintiff's Section 1981 claim that rests on her national origin must be dismissed.

■ In addition, claims brought pursuant to Section 1981 are analyzed under the same standards as Title VII claims, *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir.2000). As set forth above, the Plaintiff did not sufficiently establish claims for racial or national origin discrimination under Title VII. For similar reasons, the Court finds that the Plaintiff failed to establish claims for race discrimination against the North Shore Hospital pursuant to Section 1981. Here, the Plaintiff failed to prove a Section 1981 cause of action because there is no evidence of intentional discrimination, which is the thrust of Section 1981, or that the Plaintiff's race was even a factor in the failure to hire her as a medical biller or any change in her job duties.

Unlike Title VII, Section 1981 provides for individual liability on the part of non-employers. However, for the reasons stated above, there is no evidence of racial discrimination against the Plaintiff at the North Shore Hospital, and this individual claim against the defendant Susan Tobin also must fail.

Accordingly, the Rule 50 motion by the defendants to dismiss the Plaintiff's Section 1981 cause of action is granted.

### F. *AS TO THE NEW YORK STATE HUMAN RELATIONS LAW CAUSE OF ACTION*

■ The New York Human Rights Law ("NYHRL") provides:

Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, *unless such person had filed a complaint hereunder or with any local*

*commission on human rights*, ... provided that, where the division [of human rights] has dismissed such complaint on the grounds of *administrative convenience*, such person shall maintain all rights to being suit as if no complaint had been filed ....

N.Y. Exec. Law § 297(9) (emphasis added). The first sentence of this subsection "specifies that, subject to the 'administrative convenience' exception, a person who has filed an administrative complaint regarding discrimination is thereby deprived of his judicial 'cause of action.'" *Moodie v. Fed. Reserve Bank of New York*, 58 F.3d 879, 882 (2d Cir.1995). Thus, if a litigant brings a discrimination complaint before the NYSDHR, she may not bring a subsequent judicial action based on the same incident. *See York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 127 (2d Cir.2002) (citing *Moodie*, 58 F.3d at 882). After the NYSDHR decides the claim, as it did in this case, a litigant may only appeal that decision to the Supreme Court of the State of New York. *See* N.Y. Exec. Law § 298. This "limitation on the election of remedies applies equally to NYHRL claims brought in state court and to those brought as pendent claims in federal court." *Moguel v. Covenant House/New York*, No. 03 Civ. 3018, 2004 WL 2181084, at *9 (S.D.N.Y. Sept. 29, 2004) (citations omitted). A litigant may bring a subsequent judicial action *only* when the NYSDHR dismisses the claim for administrative convenience. *Moodie*, 58 F.3d at 882 (citing N.Y. Exec. Law § 297).

In this case, the Plaintiff filed a complaint with the NYSDHR alleging that the defendant discriminated against her during her employment on the basis of race and color. The NYSDHR found that there was no probable cause to support the Plaintiff's complaint. The Plaintiff did not appeal this decision to the New York State

Supreme Court. Because the Plaintiff initially chose to proceed with her discrimination complaint before the NYSDHR and that agency did not dismiss her claim for administrative convenience, the state claims in this action, which are based on the same incidents as her federal causes of action, are barred under the provisions Section 297(9) of the New York State Executive Law.

### III. CONCLUSION

The Court finds that, giving every favorable inference to the Plaintiff, there can be but one conclusion as to the verdict in this case that reasonable jurors could reach, namely that there is no evidence of racial or national origin discrimination in the action of the North Shore Hospital with regard to the temporary employment of the plaintiff Esther Ganthier and the failure to hire her to the position of medical biller. Accordingly the Rule 50 motion of the defendants to dismiss all the causes of action, is granted.

The Clerk of the Court is directed to enter a judgment in favor of the defendants North Shore–Long Island Jewish Health System, Inc. and Susan Tobin; dismissing the complaint in its entirety.

The Clerk of the Court is also directed to close this case.

**SO ORDERED.**